627 So.2d 264 (1993)
M.L. DRUMMOND and Sue Drummond
v.
Richard E. BUCKLEY, M.D.
No. 90-CA-1279.
Supreme Court of Mississippi.
September 2, 1993.
Rehearing Denied December 23, 1993.
*265 Charles M. Merkel, John H. Cocke, Merkel & Cocke, Clarksdale, for appellants.
Paul J. Delcambre Jr., Aultman Tyner McNeese & Ruffin, Gulfport, for appellee.
Before HAWKINS, C.J., and PITTMAN and BANKS, JJ.
BANKS, Justice, for the court:
This is a malpractice case in which the question of negligence vel non turns upon whether the patient or the physician is to be believed concerning a conversation between the two. There is also a close question as to whether, regardless of which version is believed, any harm was caused by the physician's alleged inaction. Because we find that issues of material fact are left in dispute, we reverse the grant of summary judgment.

I
On March 4, 1985, appellant, M.L. Drummond, had surgery performed on his lower back to correct a herniated disc problem. The surgery was performed at Memorial Hospital in Gulfport by Dr. Harry Danielson. Dr. Danielson left on a trip to California immediately following this surgery. In Dr. Danielson's absence, Dr. Richard Buckley attended to Drummond until his release from the hospital on March 10, 1985.
Drummond called Dr. Buckley on the morning of March 13, 1985, complaining of pain and swelling in the area of the wound, drainage from the wound, and a fever the night before. He informed Buckley that he had an appointment to see the hospital administrator at Memorial Hospital that day, and was told to meet Dr. Buckley in the emergency room of Memorial Hospital when he came to see the hospital administrator. Drummond was seen in the Memorial Hospital Emergency Room by Dr. Buckley at approximately 11:40 that morning. Dr. Buckley found Drummond's surgical wound to be red, tender, and swollen and concluded that the wound was infected. Buckley says he told Drummond that he should enter the hospital so that the infection could be properly treated. According to Dr. Buckley, proper care would have included taking a culture of the drainage from the wound so that the precise nature of the infection and the appropriate antibiotic could be determined. Taking a culture would have required that the wound be opened. Therefore, claims Dr. Buckley, a culture could not have been performed unless the patient entered the hospital. Dr. Buckley said Drummond responded as follows:
[H]e (Mr. Drummond) told me that he had an appointment to see the administrator, that he did not have time to come into the hospital at this time, that he would see about it when he got his business with the administrator taken care of. He commented that he might come back that afternoon after he had seen the administrator and he told me that he surely would see Dr. Danielson the next day.
Drummond testified he does not remember all of the details of that conversation with Dr. Buckley, because he was scared at the time. He said, though, that had he been told to enter the hospital, he probably would have done it, because he was in a lot of pain at the time. His testimony was as follows:
Q. Well, do you remember him asking or talking to you or asking you if you wanted to be admitted, telling you that he wanted to admit you to the hospital?
A. No, sir.
Q. Are you saying he didn't tell you that or are you saying you don't remember?

*266 A. I am saying that he didn't, I don't believe. If he did, I don't recall it, sir, because at that point I was scared.
Q. If he had told you to be admitted?
A. I think I would have been admitted.
Q. You think you would have?
A. Yes, because I was in a lot of pain, sir.
The Memorial Hospital Emergency Room records from that day contain an entry from Dr. Buckley regarding his visit with Drummond. The records indicate that Drummond had had recent back surgery and came to the emergency room complaining of drainage of the surgical wound, swelling in the area of the surgery, and increased pain. The only recorded recommendations of Dr. Buckley are that the patient should engage in Phisohex soaks, take the antibiotic Ampicillin, and see Dr. Danielson the next day.[1] Dr. Buckley explains the lack of an entry regarding recommended hospitalization as follows:
My normal practice is to write down what is done, which is what the patient allowed me to do. Had I written in there, recommended admission and he refuses, it would certainly have tainted his medical record and that is not my normal practice to write AMA[2] or things of that nature on the chart... . As for when he went to see another physician in the emergency room again and they saw he had an AMA, it would certainly have an adverse effect on his medical care.
Dr. Buckley testified that after Drummond left to see the hospital administrator, he communicated to Dr. Danielson that he had just seen Drummond in the emergency room and that Drummond needed to be hospitalized to take care of an infection that he had developed. Buckley said he spoke to Dr. Danielson later that afternoon, and was told that Dr. Danielson had already made that same recommendation to Drummond's wife, Mrs. Sue Drummond, earlier that day.
Dr. Danielson testified that after he returned to town on the 13th, he was informed that Drummond had arrived at the emergency room earlier that day with a wound infection. He says he then called the Drummond household. He said Mrs. Drummond answered the phone and informed him that Drummond was in the bed. He says he then told her that her husband needed to come to the emergency room immediately. Dr. Danielson had the following to say about the remainder of the conversation:
[S]he said, well, she didn't think she could get him to come to the hospital. So, I said it's imperative, it's important, it's essential and mandatory that I see him now because I was concerned about this wound. So she said, well, I don't think he'll come in to go to the hospital. I said, would you go tell him what I just said then, please? Tell him it is urgent. It is really important that I see him now. So I waited and she came back to the phone and she said, he won't go. He'll see you tomorrow. He has an appointment. He'll see you tomorrow and I informed her that if anything happened, if his temp got higher or anything like that to be sure and call me and if I were not available immediately to go to the hospital and they would get ahold of me or somebody on call... .
Mrs. Drummond denies ever having this conversation with Dr. Danielson. She said she did not speak at all with Dr. Danielson on March 13, 1985.
During the early morning hours of March 14, 1985, Drummond's condition worsened. Mrs. Drummond noted that her husband's breathing had become really shallow and that he was in a great deal of pain. She called Dr. Danielson's office early that morning. She was told that Dr. Danielson was in surgery at Gulf Coast Community Hospital, but he would be told to meet the Drummonds at the Memorial Hospital emergency room as soon as his surgery ended. Soon thereafter, Drummond was rushed by ambulance to the Memorial Hospital emergency room.
Drummond was readmitted to the hospital on the morning of March 14, 1985. Over the next several months, he received extensive *267 inpatient and outpatient treatment for his infection. A significant portion of his inpatient time was spent in the intensive care unit. Drummond contended that he incurred very large medical bills for the treatment necessitated by his infection.

II
In March 1987, Mr. and Mrs. M.L. Drummond filed suit in the Harrison County Circuit Court against Memorial Hospital at Gulfport, Drs. Buckley and Danielson. They alleged various acts of negligence committed by the defendants before, during, and after the surgery Drummond underwent on March 4, 1985, at Memorial Hospital.
Shortly before trial in this matter, the one expert witness identified by the Drummonds was disqualified by the circuit court. Investigation by defendants into the background of the proffered expert witness had shown that the witness's experience and credentials were highly suspect, and the witness refused to cooperate with discovery to clear up the numerous questions that had been raised regarding his credentials. A hearing was held in the Harrison County Circuit Court on March 26, 1990, to consider motions for summary judgment by each of the defendants and a motion for a continuance by the plaintiffs so, that they could retain another expert witness. The circuit court denied the plaintiffs' motion for continuance on the stated rationale that:
In the normal setting, the objection to the expert's qualifications in this case would come about during voir dire examination at trial. But for the request to disqualify preliminary to trial, plaintiffs' counsel would have been in a situation at trial of not being able to go forward once Dr. Gardner (Plaintiffs' proffered expert witness) was disqualified. Given this situation, it seems unfair to this Court to grant a continuance to Plaintiffs so that the case can be restructured simply because the Defense asserted its right prior to trial.
The circuit court granted summary judgment to each of the defendants on the ground that plaintiffs had no way of proving those portions of their malpractice case requiring expert testimony. Plaintiffs appealed to this Court. They do not contest the circuit court's disqualification of their expert witness or its refusal to grant a continuance. They raise only the issue for review of whether, despite their lack of an expert witness for trial, the circuit court erred in entering summary judgment in favor of Dr. Buckley on Drummond's claim that Dr. Buckley was negligent in neither hospitalizing Drummond nor culturing the wound of Drummond on March 13, 1985, when Drummond presented himself to the emergency room for treatment of his wound infection.

III
As a general matter of Mississippi law, summary judgments should only be issued where the moving party successfully demonstrates to the Court that no genuine issue of material fact exists from the record and he is entitled to judgment as a matter of law. Palmer v. Biloxi Regional Medical Center, 564 So.2d 1346, 1355 (Miss. 1990); American Legion Ladnier Post No. 42, Inc. v. City of Ocean Springs, 562 So.2d 103, 106 (Miss. 1990); Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss. 1983). All evidentiary matters before the Court must be considered in the light most favorable to the non-moving party. McFadden v. State, 580 So.2d 1210, 1214 (Miss. 1991); Webster v. Mississippi Publishers Corp., 571 So.2d 946, 949 (Miss. 1990); Brown, 444 So.2d at 362. The non-moving party may not defeat the motion merely by making general allegations or unsupported denials of material fact, however. Palmer, 564 So.2d at 1356; Smith v. Sanders, 485 So.2d 1051, 1054 (Miss. 1986); Hill v. Consumer National Bank, 482 So.2d 1124, 1128 (Miss. 1986). The "party opposing the motion must by affidavit or otherwise set forth specific facts showing that there are indeed issues for trial." Palmer, 564 So.2d at 1356; Fruchter v. Lynch Oil Co., 522 So.2d 195, 199 (Miss. 1988); Smith v. First Federal Savings & Loan Association of Grenada, 460 So.2d 786, 792 (Miss. 1984). "To have power to generate a genuine issue of material fact," the "affidavit or otherwise" (e.g., depositions and answers to interrogatories) must: (1) be sworn; (2) be made upon personal knowledge; and (3) show that the party providing the factual evidence is competent *268 to testify. Palmer, 564 So.2d at 1356; Magee v. Transcontinental Gas Pipe Line Corp., 551 So.2d 182, 186 (Miss. 1989).
As in all claims for negligence, in order to establish a prima facie case for medical malpractice, the following elements must be proven:
(1) The existence of a duty on the part of the defendant to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury;
(2) A failure to conform to the standard required of the defendant;
(3) An injury to the plaintiff proximately caused by the breach of such duty by the defendant;
Burnham v. Tabb, 508 So.2d 1072, 1074 (Miss. 1987) (citing W. Keeton, Prosser & Keeton on Torts, § 41 (5th ed. 1984).
The arguments of the parties on appeal center on the duty, breach, and causation prongs of the negligence model. It is undisputed that Drummond contracted a serious infection that required treatment of a very extensive and very costly nature. The true matters of contention are whether, without an expert witness, Drummond had sufficient evidence to prove that Dr. Buckley breached a minimum standard of care, and if so, whether such breach proximately caused damages to be suffered by the Drummonds.

A.
Physicians in Mississippi are placed under the general duty to employ "reasonable and ordinary care" in their treatment of patients. Palmer, 564 So.2d at 1354; Phillips v. Hull, 516 So.2d 488, 491 (Miss. 1987); Hall v. Hilbun, 466 So.2d 856, 866 (Miss. 1985). The duty to exercise reasonable and ordinary care is commonly stated as follows for physicians:
Given the circumstances of each patient, each physician has a duty to use his or her knowledge and therewith treat through maximum reasonable medical recovery, each patient with such reasonable diligence, patience, skill, competence, and prudence as are practiced by minimally competent physicians in the same specialty or general field of practice throughout the United States, who have available to them the same general facilities, services, equipment and options.
Palmer, 564 So.2d at 1354; Ladner v. Campbell, 515 So.2d 882, 888 (Miss. 1987); Hall, 466 So.2d at 873. Mississippi case law has generally demanded that a plaintiff in a medical malpractice action employ expert testimony to establish failure by the defendant physician to adhere to the minimum standard of care. Kelley v. Frederic, 573 So.2d 1385, 1387 (Miss. 1990); Palmer, 564 So.2d at 1355; Phillips, 516 So.2d at 491. Lay testimony is sufficient to establish only those things that are purely factual in nature or thought to be in the common knowledge of laymen. Kelley, 573 So.2d at 1388; Palmer, 564 So.2d at 1355; Walker v. Skiwski, 529 So.2d 184, 187 (Miss. 1988).
Drummond contends that, although he would have had no expert of his own at trial, the depositions of Buckley and Danielson established that the standard of care demanded that he be told that he needed to be hospitalized or that his wound be cultured in the emergency room. He directs our attention to the case of Kelley v. Frederic, 573 So.2d at 1346 (Miss. 1990), where the Court said, "There is no magical form to which a plaintiff's supporting expert opinion must conform, so long as its import is apparent." 573 So.2d at 1389.
In the case at bar, Drummond presents the following passage from Dr. Buckley's deposition to establish the minimum standard of care:
APPELLANTS' COUNSEL: What did the standard of care require with regard to recommendations to Mr. Drummond about hospitalization on March 13th, 1985?
APPELLEE'S COUNSEL: Note my objection.
DR. BUCKLEY: Exactly what I did, recommended him to be hospitalized.

He also presents the following from Dr. Danielson's deposition:
APPELLANT'S COUNSEL: If, in fact, he (Dr. Buckley) did try to get a culture and recommended that he went to the *269 hospital, then you think he complied with the standard of care?
DR. DANIELSON: Why, sure.
APPELLANT'S COUNSEL: What if he did not try to do those things?
DR. DANIELSON: Well, it goes without saying.

Dr. Buckley's statement that the standard of care required exactly what he claims to have done  recommend that Mr. Drummond enter the hospital  is a clear admission of the applicable standard of care. Moreover, he is certainly qualified to render such an opinion, as the issue relates to his area of practice. The statement by Dr. Danielson is not quite as clear but, nevertheless, is significant. He did not make an affirmative statement regarding what the applicable standard would have entailed under the circumstances. The question of what he meant by "Well, it goes without saying" becomes a moot one, though, in light of the admission made by Dr. Buckley. Moreover, standing alone, it may be sufficient grounds to deny summary judgment, for one strong inference is that its true meaning is that the failure to do those things would be a breach of the standard of care.

B.
Given a delineation of the specific acts that needed to be performed to adhere to the standard of care, the question of whether a breach of that standard occurred becomes a factual inquiry focusing on whether the physician did the delineated acts. The Mississippi Supreme Court noted in Kelley that:
Without doubt, in a medical malpractice action a lay patient may give creditable testimony regarding purely factual matters and thus avoid summary judgment if those matters relate to material facts, notwithstanding the defendant physician's testimony to the contrary.
573 So.2d at 1388.
In the case at bar, Drummond disputes whether he was told by Dr. Buckley that he should enter the hospital to have his infection treated. He said he does not recall the specifics of the conversation he had with Dr. Buckley in the Memorial Hospital emergency room on the morning of March 13, 1985, because he was scared. He recalled, though, that he was in a great deal of pain at the time, and consequently, would have entered the hospital if asked.
His story gains support from the fact that the record entry made by Dr. Buckley for that visit did not mention any recommendation that Drummond be hospitalized. See Stevenson v. Linens of the Week, etc., 688 F.2d 93, 98 (D.C. Cir.1982); Sabatino v. Curtiss National Bank, 415 F.2d 632 (5th Cir.1969); Estate of Lockwood v. Commissioner of Internal Revenue, 350 F.2d 712, 718 (1965); Kober v. District Unemployment Compensation Board, 384 A.2d 633, 635 (D.C. 1977). Dr. Buckley's notes in the record indicate instead that Drummond should see Dr. Danielson the following day. Dr. Buckley swears that he told Drummond that he should enter the hospital. His story is supported by testimony from Dr. Danielson that he phoned the Drummond household on March 13, 1985, to encourage Drummond to immediately enter the hospital after Dr. Danielson had received word from Dr. Buckley earlier that day that Drummond needed to be hospitalized to take care of an infection. Mrs. Drummond claims, however, that she and her husband did not receive a call from Dr. Danielson on March 13, 1985.
Appellee argues on the strength of Fox v. Smith, 594 So.2d 596 (Miss. 1992), and Mississippi Farm Bureau Insurance Company v. Todd, 492 So.2d 919 (Miss. 1986), that no jury question exists as to what was told to Drummond by Dr. Buckley, because Dr. Buckley has stated positively what he told Drummond, while Drummond says he does not remember the specifics of that conversation. Fox and Todd do stand for the proposition that no jury question exists as to the content of a conversation when one of the parties to the conversation positively swears that a certain thing was said and the other party does not dispute that contention. Fox at 605; Todd at 929-930. That is not at all the scenario we have in the case at bar, however. Drummond does not purport to recall all the specifics of the conversation he had with Dr. Buckley, but he certainly disputes Dr. Buckley's version of the story. *270 Furthermore, Drummond's challenge to Dr. Buckley's account is supported by the omission of a hospitalization recommendation in the emergency room records.[3]
It is impossible to conclusively determine from the record what exactly was told to Drummond by Dr. Buckley. Therefore, it is impossible to determine without trial whether Dr. Buckley conformed to the conduct that he himself admitted was minimally required.

C.
This Court has noted that proximate cause arises when the omission of a duty contributes to cause an injury. Clayton v. Thompson, 475 So.2d 439, 445 (Miss. 1985); Hall, 466 So.2d at 869. For medical malpractice actions, this Court has also said that:
Mississippi law does not permit recovery of damages
merely because of mere diminishment of the "chance of recovery." Recovery is allowed only when the failure of the physician to render the required level of care results in the loss of a reasonable probability of substantial improvement of the plaintiff's condition.
Clayton v. Thompson, 475 So.2d 439, 445 (Miss. 1985) (quoted in Ladner v. Campbell, 515 So.2d at 889). In Ladner, the Court observed that the Clayton decision placed the Mississippi rule in alignment with those jurisdictions which hold that adequate proof of proximate cause in a medical malpractice case requires evidence that "in the absence of the alleged malpractice, a better result was probable, or more likely that not." 515 So.2d at 889. Mississippi case law generally requires the plaintiff to employ expert testimony in making this showing. Palmer, 564 So.2d at 1355; Hull, 516 So.2d at 491; Hall, 466 So.2d at 870-873.
In the instant case, Drummond contends that Dr. Buckley's failure to act in accordance with the standard of care caused Drummond to go into a toxic state, which required him to be treated extensively in the Intensive Care Unit of the hospital. He says that by the time he was taken to the hospital by ambulance on March 14, the infection had spread into his blood stream, and he was in such serious condition that he had to be immediately admitted to ICU. The implication is that Drummond would not have required intensive care treatment had he been admitted into the hospital on March 13. Drummond looks for medical expert evidentiary support for his claim of proximate cause on the following passage from Dr. Danielson's deposition:
DR. DANIELSON: The biggest thing that was the most distressful was when he refused to come in to see me on that Wednesday, the 13th. There would have been all the difference in the world in this case.

... APPELLANT'S ATTORNEY: ... you said it would make all the difference, in your opinion, would it have made the difference where he would have been much more treatable?

DR. DANIELSON: Oh sure, in my opinion.

APPELLANT'S ATTORNEY: In your opinion, he probably would have recovered if he had been admitted on the 13th without all of the problems he had?
DEFENSE ATTORNEY: I object to the form of the question.
DR. DANIELSON: Well, I can't be God, but I sure give you a probability that he would be a lot different as far as his *271 clinical course went. There would have been a lot of difference.

Drummond's malpractice claim appears to be different from most in that he is not arguing simply that negligence by Dr. Buckley caused him to incur an ultimate physical result worse than he otherwise would have. He is also claiming that negligence by Dr. Buckley allowed his infection to worsen to such a degree that, in order to cure his infection, he was required to incur treatment far more extensive and expensive than he otherwise would have. Drummond recovered and there is absolutely no indication of evidence that his ultimate physical condition is worse for the delay in hospitalization. The question whether he suffered more and incurred more expense is a different and much closer question.
The record shows that, even though Drummond did not enter the hospital on March 13, Dr. Buckley prescribed the antibiotic Ampicillin for Drummond. When he arrived at the emergency room on the morning of March 14, Dr. Danielson prescribed the same antibiotic  Ampicillin  for Drummond to take. That prescription was changed relatively soon thereafter to Gentamicin upon the recommendation of another doctor. Id. The culture had not been completed by the time the change in medication occurred. Therefore, there is little reason to expect that Drummond would have been placed on Gentamicin at any earlier time had he been hospitalized on the day before. Moreover, it cannot be doubted that Drummond's infection worsened at least to some degree, during the hours before he was rushed to the hospital, because he did not do any of the things that Dr. Buckley recommended to him, including getting and taking the ampicillin and using Phisohex soaks for the wound.
Dr. Danielson stated specifically, however, that Drummond's condition would have been much more treatable had he entered the hospital on the March 13. Further, his statement that Drummond's clinical course would have been much different had he entered the hospital one day earlier carries with it the clear import that Drummond's infection would not have reached a stage requiring treatment as extensive as that Drummond in fact required. Even Dr. Buckley said that it would have been beneficial to Drummond to have had his treatment started sooner.
Our summary judgment rules demand that the weighing of evidence be left to a jury, unless it can be said that no reasonable jury could decide the issue in favor of the non-moving party. We cannot say that no reasonable jury could determine that Dr. Buckley committed negligence which caused Drummond to suffer greater and more expensive treatment.

CONCLUSION
For the foregoing reasons the judgment of the circuit court is reversed and this case is remanded to that court for further proceedings.
REVERSED AND REMANDED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN and PITTMAN, JJ., concur.
McRAE, J., concurs in result only.
SMITH, J., dissents with separate written opinion joined by JAMES L. ROBERTS, Jr., J.
SMITH, Justice, dissenting:
The majority correctly holds that the depositions of Dr. Buckley and Dr. Danielson established that the standard of care demanded that Drummond be advised that he needed to be hospitalized or that his wound be cultured in the emergency room. The statements by both doctors in the depositions are clear admissions of the applicable standard of care.
However, the opinion's more significant holdings are where we part company. First, the majority holds that there is a genuine issue of fact as to what Dr. Buckley positively stated that he told Drummond about the importance of hospitalization, as compared to what Drummond thinks or believes he would have said and done. Further, the majority holds Drummond has produced sufficient credible medical evidence that, had Dr. Buckley admitted Drummond into the hospital a *272 day earlier for treatment of the infection, a reasonable jury could have determined that Dr. Buckley committed negligence, which caused Drummond to suffer greater and more expensive treatment. It is these portions of the opinion from which I am compelled to dissent.
Dr. Buckley explicitly stated what he had told Drummond concerning hospitalization:
I recommended that he be hospitalized that day. I talked to Dr. Danielson later that day. Dr. Danielson had already talked to his wife and recommended the same thing. I wasn't concerned with the standard of care. I simply recommended to a patient that he should be hospitalized. It is my opinion that he should be hospitalized. I told him so. I made sure that Dr. Danielson knew that I had seen him and thought he needed to be in the hospital. I talked to Dr. Danielson later the same day, in which he related that he had talked with Mrs. Drummond and made, basically, made the same recommendation. I don't know what else I could have done. I didn't have police powers to handcuff him and to make him do it. I recommended that he go in the hospital.
Dr. Buckley found Drummond's surgical wound to be red, tender and swollen. He concluded that the wound was infected and that proper treatment mandated hospitalization. Proper treatment would have included inter alia, taking a culture of the drainage from the wound. This procedure would absolutely have required hospitalization.
Dr. Danielson corroborated Dr. Buckley's testimony. Danielson testified that prior to receiving notice from Dr. Buckley that Drummond needed to be hospitalized, he had already made the same recommendation to Drummond's wife earlier that day. Dr. Danielson stated what he told Mrs. Drummond:
[S]he said, well, she didn't think she could get him to come to the hospital. So, I said it's imperative, it's important, it's essential and mandatory that I see him now because I was concerned about this wound. So she said, well, I don't think he'll come in to go to the hospital. I said, would you go tell him what I just said then, please? Tell him it is urgent. It is really important that I see him now. So I waited and she came back to the phone and she said, he won't go. He'll see you tomorrow. He has an appointment. He'll see you tomorrow and I informed her that if anything happened, if his temp got higher or anything like that to be sure and call me and if I were not available immediately to go to the hospital and they would get hold of me or somebody on call... .
Mrs. Sue Drummond denies ever having this conversation with Dr. Danielson, and even speaking by phone with him on March 13, 1985.
Drummond was decidedly uncertain in his testimony concerning the events in question. Drummond's deposition is very revealing as to his inability to recall the specific details of the conversation with Dr. Buckley concerning whether or not he should be hospitalized. Drummond stated:
Q. Well, do you remember him asking or talking to you or asking you if you wanted to be admitted, telling you that he wanted to admit you to the hospital?
A. No sir.
Q. Are you saying he didn't tell you that or are you saying you don't remember?
A. I am saying that he didn't, I don't believe. If he did, I don't recall it, sir, because at that point I was scared.
Q. If he had told you to be admitted?
A. I think I would have been admitted.
Q. You think you would have?
A. Yes, because I was in a lot of pain, sir.
Drummond's uncertainty concerning his conversation with Dr. Buckley as to what Drummond thought he would have done, or what he believed he was told is at best speculation.
This Court has held that contradictory testimony by two parties to a conversation, based upon their respective personal recollection of the substance of a conversation, creates a question of fact for a jury's determination. Fox v. Smith, 594 So.2d 596 (Miss. 1992). However, this Court has also held that the issue is entirely different when one party to a conversation testifies positively about the substance of a conversation from his recollection, while the other party to the *273 conversation cannot recall the substance of the conversation. In Mississippi Farm Bureau Mutual Insurance Co. v. Todd, 492 So.2d 919 (Miss. 1986), an insured testified that an agent told him that he had bound coverage for the insured. The agent testified that the conversation took place and did not deny that he told the insured that the insured had coverage only that he "could not recall the substance of the conversation." Id. at 930 (Emphasis added).
In Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 655 (Miss. 1975), this Court held no factual dispute existed when Franklin, Paymaster's manager, stated: "`I cannot testify as to the specifics of the conversation, I cannot,' and when reexamined on the point, repeated that he simply did not know and could not recall any part of the conversation with Mitchell."
A review of all of the sworn testimony indicates clearly that Drummond merely speculated about the conversation between him and Dr. Buckley. Drummond admittedly had no personal recollection, hence no personal knowledge, of what Dr. Buckley told him in the emergency room. Most importantly, Drummond did not deny Dr. Buckley's version of the facts. Dr. Danielson supported Dr. Buckley's testimony. Mrs. Drummond unequivocally denied any conversation with Dr. Danielson. Neither of these individuals was present in the emergency room when the alleged conversation between Dr. Buckley and Drummond took place. Mrs. Drummond's denial neither corroborates her husband's version nor does it dispute Dr. Buckley's version of the facts. The bottom line is: under these circumstances Dr. Buckley's testimony that he recommended hospitalization is undisputed.
The majority opinion holds that Dr. Buckley's failure to note on the emergency room record that Drummond refused his recommended hospitalization corroborates Drummond's testimony. The absence of such entry does not prove that the recommendation was not made. Dr. Buckley explained that he thought it was in the patient's best interest that he not make such an entry on the record in order to avoid Drummond's being labeled as a problem patient. Dr. Danielson concurred that this was standard procedure. This practice is certainly a common sense approach. The very reason that Dr. Buckley ended up treating Drummond in the first place was due to the absence of Dr. Danielson, the surgeon on Drummond's case. Suppose Danielson and Buckley were both unavailable, and had noted on Drummond's emergency room records AMA, "against medical advice," and Drummond once again was in need of immediate medical attention. Upon admittance to the emergency room, how would attending nurses and doctors have reacted to these prior notations of Drummond's prior medical history? I would think most definitely there would be a cautious and adverse reaction on the part of these medical professionals. As Dr. Buckley explained in his deposition:
Q. Your normal practice?
A. My normal practice is to write down what is done, which was what the patient allowed me to do. Had I written in there, recommended admission and he refuses, it would have certainly have tainted his medical record and that is not my normal practice to write AMA or things of that nature on the chart.
Q. What was your concern of writing that in this chart, the effect it would have on Mr. Drummond?
A. As far as when he went to see another physician in the emergency room again and they saw he had an AMA, it would certainly have an adverse effect on his medical care.
Equally apparent from the emergency room record and the testimony of Ron Burton is that Drummond's primary purpose for going to the hospital was not to be examined and treated by Dr. Buckley, but rather a desire to complain to the hospital administration about his treatment prior to March 10. Drummond already had a scheduled appointment with the hospital administrator on March 13, to register his complaints about prior treatment. Actually, the visit was more closely akin to an office visit, as evidenced by the ER notation that he had an 11:25 appointment with Dr. Buckley and the incompleteness of other parts of the ER record.
*274 Although not Drummond's surgeon, Dr. Buckley was certainly, in Danielson's absence, the attending physician. He could only recommend to Drummond a course of treatment to follow. Drummond, on the other hand, had complete control of his situation. He could follow Dr. Buckley's advice or refuse it. Drummond had an absolute right to withhold consent and disregard Dr. Buckley's recommendation and advice. See e.g. Fox v. Smith, 594 So.2d 596.
The recorded recommendations of Dr. Buckley on the ER records are that Drummond should engage in Phisohex soaks, that he take Ampicillin, an antibiotic drug, and that he should see Dr. Danielson the next day. It is unrefuted in the record that Drummond did not follow this advice by Dr. Buckley. Could it not be said that Drummond's failure to follow any medical advice whatsoever was the proximate cause of his worsened condition?
Drummond must establish that there is a genuine issue of material fact as to whether the actions of Dr. Buckley caused or contributed to his injury. Drummond must prove that in the absence of the alleged malpractice, a better result was probable or more likely than not. Ladner v. Campbell, 515 So.2d 882, 889 (Miss. 1987) citing 54 A.L.R. 4th 10 § 4. Drummond's position requires that he concede that on March 13 he was suffering from an infection and should have been hospitalized. In fact, he was hospitalized from March 14 until March 31 undergoing treatment for that infection. The treatment he ultimately received after admission to the hospital was the antibiotic drug Ampicillin, the same medication prescribed by Dr. Buckley on March 13. Where is the proof in the record before us that if Drummond had been admitted to the hospital on March 13 he would have been discharged one day sooner than March 31, and more importantly, the course of his treatment during hospitalization would have been different?
Drummond fails to establish that any acts of Dr. Buckley proximately caused his hospitalization on March 14. The evidence tends to show that it was the underlying infection from Dr. Danielson's surgery that caused Drummond's further hospitalization, coupled with his own failure to follow any of Dr. Buckley's medical advice.
Considering all evidence favorable to the plaintiff, the testimony merely creates speculation as to the outcome of Drummond's course of recovery, had he been admitted to the hospital on March 13, as Dr. Buckley had insisted. Speculation alone is insufficient to create a disputed issue of fact. Burnham v. Tabb, 508 So.2d 1072 (Miss. 1987).
There is no genuine issue of material fact existing in the record in the case sub judice, merely speculation. The general rule of law regarding summary judgments is that they should only be granted where the moving party successfully demonstrates to the court that no genuine issue of material fact exists from the record and that the moving party is entitled to judgment as a matter of law. Palmer v. Biloxi Regional Medical Center, 564 So.2d 1346, 1355 (Miss. 1990). However, the non-moving party may not defeat the motion merely by making general allegations or unsupported denials of material fact. Smith v. Sanders, 485 So.2d 1051, 1054 (Miss. 1986). The "party opposing the motion must by affidavit or otherwise set forth specific facts showing that there are indeed issues for trial." Palmer, 564 So.2d. at 1356.
The majority admits Drummond's malpractice claim is different from most in that he is not arguing simply that negligence by Dr. Buckley caused him to incur an ultimate physical result worse than he otherwise would have acquired. Drummond claims that he was required to incur treatment far more extensive and expensive than he otherwise would have because Dr. Buckley allowed his infection to worsen. Drummond completely recovered and the record contains not a scintilla of evidence that Drummond's condition worsened due to the one day delay in hospitalization.
The majority claims that whether Drummond suffered more and incurred more expense is a different and much closer question. Disregard for a moment the question of what Dr. Buckley told Drummond regarding the need for hospitalization on March 13. It is undisputed that Dr. Buckley, in fact, prescribed the antibiotic, Ampicillin, for Drummond. Also undisputed is that Drummond did not take Ampicillin, nor did he begin recommended Phisohex soaks for the wound. Drummond simply refused to do anything Dr. Buckley recommended. On *275 March 14, when Drummond was admitted to the hospital, Dr. Danielson prescribed the same antibiotic, Ampicillin, for Drummond. Drummond had no medical expert at trial. Where is the proof in this record of Dr. Buckley's negligence? There is nothing but speculation.
In conclusion, Dr. Buckley, on March 13, 1985, based upon his education and experience, recommended that Drummond be admitted to the hospital for treatment. The physician thought this was essential to prevent the situation developing into a serious wound infection. Drummond refused. Buckley testified in detail and emphatically as to his ER conversation with Drummond. Drummond, on the other hand, could not recall the conversation and merely speculated as to what he thought or believed he would have done. Also, Drummond produced no medical testimony that had Dr. Buckley acted in any way differently, Drummond's hospital stay would have been shortened, that his condition would not have worsened, or that his treatment would have been altered in any way. There is no genuine issue of material fact warranting reversal. The trial judge correctly granted summary judgment. We should affirm the trial court.
I respectfully dissent.
JAMES L. ROBERTS, Jr., J., joins this opinion.
NOTES
[1] Dr. Danielson was scheduled to return from California on the same day Mr. Drummond was seen in emergency room by Dr. Buckley  March 13, 1985.
[2] We take the witness to mean, "against medical advice."
[3] Unlike in the cases relied upon by the dissent, Drummond never admitted to having no recollection as to what was said. Mississippi Farm Bureau Mutual Ins. Co. v. Todd, 492 So.2d 919, 930 (Miss. 1986) (witness "did not deny" making the statement, he simply did not "recall the substance of the conversation") and Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 655 (Miss. 1975) (witness could not recall any part of the conversation). The fact that he may not recall every specific of a conversation does not obliterate his recollection as to what was not said. The dissent also accepts the explanation for failing to note advice to be admitted in the hospital notes that the failure was a deliberate effort to protect the patient. The question is from what? Surely, it cannot be suggested that supposed medical professionals would withhold proper service because a patient has on occasion exercised his prerogative not to follow medical advice. Moreover, even if one makes this dubious assumption, it is an explanation for jury consideration with regard to the weight to be given the absence of the notation.