GRIFFIS, J.,
 

 for the Court.
 

 ¶ 1. Barbara Dotson filed a medical negligence action against Paul Jackson, M.D., in the Circuit Court of Washington County. Dr. Jackson filed a motion for summary judgment arguing that Dotson’s designation of an expert witness was untimely and the statement provided by the expert witness did not set forth a prima facie case of medical negligence. The circuit court granted Dr. Jackson’s motion for summary judgment, and Dotson now appeals. We find no error and affirm.
 

 FACTS
 

 ¶ 2. On August 8, 2000, Dr. Jackson, an obstetrician/gynecologist, performed a hysterectomy on Dotson. Dotson’s bladder was lacerated during surgery. Dr. Robert Curry, a urologist, was brought in to repair Dotson’s bladder during the surgery. Dotson claims to have had problems associated with her bladder following the surgery.
 

 ¶ 8. On August 31, 2001, Dotson initiated this lawsuit for medical negligence. She alleged that Dr. Jackson’s negligence caused her to be unable to control her bladder. Further, she claimed that Dr. Jackson’s negligence also led to meralgia paresthetica, a condition that causes pain and numbness in her thighs. She was diagnosed with this condition by a neurologist in November 2000. However, Dotson failed to present any evidence that relates her meralgia paresthetica with the surgery performed by Dr. Jackson.
 

 ¶ 4. The complaint was amended to join The King’s Daughters Hospital as a defendant. This was the hospital where the surgery was performed.
 

 
 *232
 
 115. The parties entered an agreed scheduling order. According to the order, Dotson’s expert witnesses were to be designated by February 1, 2002, and the defendants’ expert witnesses were to be designated by March 15, 2002.
 

 ¶ 6. Dotson failed to designate any expert witnesses until March 26, 2002. On September 4, 2002, Dr. Jackson filed a motion for summary judgment. The motion was based on the following: (1) Dotson’s failure to designate an expert witness and (2) Dotson’s failure to provide any expert testimony to prove the elements required to establish a prima facie case of medical negligence. The hospital filed a similar motion for summary judgment. Dotson’s response to Dr. Jackson’s motion contained a copy of her designation of two medical experts, but it contained no affidavits from either expert. Dr. Jackson’s counsel claimed to have never received Dotson’s designation.
 

 ¶ 7. Thereafter, Dr. Jackson’s counsel learned that Dr. Jackson had filed for bankruptcy. Dotson moved for partial relief from the automatic stay in bankruptcy; thus, the malpractice case was continued.
 

 ¶ 8. On October 4, 2004, Dotson filed a motion to have the circuit judge assigned to the case, the Honorable Margaret Carey-McCray, removed because she had been one of Dr. Jackson’s patients. Following that motion, despite numerous attempts, Dr. Jackson’s counsel received no information from the circuit court or Dotson’s counsel regarding the case. It was not until April 7, 2006, that Dr. Jackson’s counsel was finally apprised that the circuit judge had entered an order granting Dotson’s motion for recusal. Circuit Judge Richard A. Smith was then assigned the case.
 

 ¶ 9. The parties agreed to have a hearing on the motions for summary judgment on June 5, 2006. On June 1, 2006, Dotson’s counsel requested that Dr. Jackson’s counsel agree to a continuance of the hearing so that he could discuss the case with Dotson. Dr. Jackson’s counsel refused to agree to a continuance due to the lengthy nature of the proceedings to that point.
 

 ¶ 10. About one hour before the scheduled hearing, Dr. Jackson’s counsel received Dotson’s response to the motion for summary judgment. The response contained a letter from Dr. Norman Reiss, Dotson’s expert witness. The letter was dated March 24, 2002, more than four years before the hearing. The letter stated the following:
 

 With regard to laceratio[n] of bladder
 

 a. it is against the Standard of Care to injure the bladder (laceration of bladder) during the performance of a vaginal and or abdominal hysterectomy [sic].
 

 1. Should such an injury occur during the above operative proceedure [sic], it must be recognized and suitable repair done at this time — either by operating surgeon and a consultant Urologist.
 

 2. The Urologist should be available by the fact that the operati[n]g surgeon anticipates a diffi[c]ult procee-dure [sic]. The Urologist stands by just in case.
 

 b. The Standard of Care requires that the operating surgeon should anticipate possible bladder injury during the performance of vaginal and or abdominal hysterectomy especially if the dissection is difficult depending on the pathological condition in the pelvis.
 

 The Standard of Care requires anticipation of possible complication — (inadver-tant [sic] injury t[o] bladder)[.] Proper measures to insure that complications if they occur during a surgical proceedure
 

 
 *233
 
 [sic] receive prompt attention by suitable specialist consultants.
 

 The Standard of Care requires anticipation of possible problems, as well, as to take measures to insure these problems are resolved at the time they occur.
 

 Have Urologist on standby [for] a difficult proceedure [sic]. Have Urologist scrub at operation-until urological structures are not damaged.
 

 [[Image here]]
 

 The remainder of the letter contained Dr. Reiss’s answers to specific questions posed by Dotson’s attorney.
 

 ¶ 11. The opinions of Dr. Reiss contained in this letter were not presented in a sworn affidavit. Instead, it was accompanied by the affidavit of Dotson’s attorney who stated under oath that the letter contained the expert medical opinion of Dr. Reiss. Dotson’s attorney claimed that Dr. Reiss did not have access to a fax machine in order to immediately fax a signed affidavit. Dotson requested a continuance in order to obtain such affidavit, but the request was never addressed by the circuit judge.
 

 ¶ 12. Also at the hearing, Dotson announced that she was dismissing her claim against the hospital; thus, only her claim against Dr. Jackson remained. The circuit court heard arguments from both parties regarding Dr. Jackson’s motion for summary judgment and then took the matter under advisement.
 

 ¶ 13. On June 14, 2006, before the circuit judge ruled on the motion for summary judgment, Dotson filed a motion to reconsider and attached an affidavit from Dr. Reiss. Dr. Reiss’s affidavit contained the following statements:
 

 1.I am a medical doctor, duly licensed. I am now retired from active practice. My resume is attached as Exhibit A.
 

 2. I was retained by Byrd and Associates to review the above named case for possible medical negligence.
 

 3. I reviewed the medical records of the Plaintiff as well as her deposition and that of Dr. Paul Jackson.
 

 4. It is my opinion, to a reasonable degree of medical probability, that Dr. Paul Jackson breached the acceptable standard of care when, during his lapa-roscopic hysterectomy on Ms. Dotson, he cut her bladder. Even though Ms. Dotson underwent surgery to correct this error, it was still a breach of the standard of care for him to have cut her bladder in the first place, causing her injury.
 

 6.The standard of care requires that the operating surgeon should anticipate possible bladder injury during the performance of a vaginal or abdominal hysterectomy, especially if the dissection is difficult depending on the pathological condition in the pelvis. A surgeon should take the time to properly examine a patient before he or she is brought to the operating room. A proper abdominal and physical examination will demonstrate that structures within the pelvis are non movable.
 

 6. In the instant case, Dr. Jackson failed to conduct a proper examination of Ms. Dotson and failed to anticipate and prepare for the possible complication of cutting the bladder.
 

 7. However, even if a urologist was available and made the proper repair, it is still my opinion that Dr. Jackson breached the standard of care by cutting the bladder.
 

 8. I was contacted prior to the hearing on the Motion for Summary Judgment that was held on June 5. However, I have retired since I was originally retained in this case and relocated to Tennessee. I told Attorney Suzanne Keys
 
 *234
 
 that I did not have access to a fax machine to be able to receive a fax of this affidavit and return a faxed signed copy to her prior to the hearing. However, I authorized her to inform the Court of my opinion stated above.
 

 ¶ 14. Dr. Jackson filed a motion to strike the affidavit of Dr. Reiss as being untimely. Dr. Jackson alternatively argued that the affidavit failed to set forth a prima facie case of medical negligence. The circuit judge never ruled on Dr. Jackson's motion to strike, and as far as this Court can tell, the circuit judge considered the affidavit before ruling on the summary judgment motion.
 

 ¶ 15. The circuit court granted summary judgment in favor of Dr. Jackson on June 26, 2006, finding that Dotson failed “to meet her burden of establishing through expert testimony that Dr. Jackson was negligent as alleged in the [cjomplaint herein.”
 

 ¶ 16. On appeal, Dotson argues that summary judgment was inappropriate because: (1) she produced evidence of the identity of an expert and evidence of the expert’s opinion, (2) she made out a prima facie case for medical negligence, and (3) the facts of this case are such that the layman’s exception applies. We have combined Dotson’s first two assignments of error as they are interrelated.
 

 STANDARD OF REVIEW
 

 ¶ 17. The standard of review of a motion for summary judgment is well settled:
 

 Our appellate standard for reviewing the grant or denial of summary judgment is the same standard as that of the trial court under Rule 56(c) of the Mississippi Rules of Civil Procedure. This Court employs a de novo standard of review of a lower court’s grant or denial of a summary judgment and examines all the evidentiary matters before it-admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied.
 

 McMillan v. Rodriguez,
 
 823 So.2d 1173, 1176-77(¶ 9) (Miss.2002) (citations omitted).
 

 ANALYSIS
 

 1. Whether Dotson provided timely expert medical testimony sufficient to establish a prima facie case of medical negligence.
 

 ¶ 18. Dotson first argues that summary judgment was improper because she produced evidence of the identity of an expert and evidence of the expert’s opinion. Second, she argues that she has met her burden of establishing a prima facie case of medical negligence via the entire pleadings. In response, Dr. Jackson contends that Dotson’s expert affidavit was both untimely and insufficient to establish a pri-ma facie case of medical negligence.
 

 ¶ 19. Dotson claims that Dr. Jackson had notice as to whom her expert was and to what he would testify because she served her response to the motion for summary judgment. That response contained an affidavit of Dotson’s attorney that explained the substance of the expert’s opinion. Dr. Jackson responds that the affidavit of Dotson’s attorney, along with the letter from Dr. Reiss — the expert witness — did not establish the requisite elements of a medical negligence claim. However, as Dr. Jackson notes, the circuit
 
 *235
 
 court did not rule on the untimeliness of Dotson’s medical expert affidavit.
 

 ¶ 20. At the hearing, Dotson requested a continuance to obtain a sworn affidavit from Dr. Reiss. The circuit court took the entire matter under advisement. Nine days later, Dotson filed the affidavit with the circuit court. Dr. Jackson moved to strike the affidavit as untimely. The circuit court did not rule on the motion for continuance or the motion to strike. Furthermore, the circuit judge, in his order granting summary judgment, did not make a specific finding that Dotson’s expert affidavit was untimely. The order simply finds that the “[pjlaintiff has failed to meet her burden of establishing through expert testimony that Dr. Jackson was negligent as alleged in the [cjomplaint herein.”
 

 ¶ 21. It is unclear from the order whether the circuit court’s determination was based on the untimeliness of the affidavit or the sufficiency of the affidavit’s content. However, because we find that the expert affidavit was both untimely and insufficient to set forth a prima facie case of medical negligence, we find no error in the circuit court’s grant of summary judgment in favor of Dr. Jackson.
 

 a. Timeliness of Dotson's Expert Witness Affidavit
 

 ¶22. The Mississippi Supreme Court has stated:
 

 Discovery responses are to be supplemented seasonably pursuant to Rule 26(f) of the Mississippi Rules of Civil Procedure. It has been held that “seasonably does not mean several months later. It means immediately.”
 
 West v. Sanders Clinic for Women, P.A.,
 
 661 So.2d 714, 721 (Miss.1995). Additionally, “seasonableness must be determined on a case[-]by[-]ease basis looking at the totality of the circumstances surrounding the supplemental information the offering party seeks to admit.”
 
 Blanton v. Board of Supervisors,
 
 720 So.2d 190, 195 (Miss.1998).
 

 Bowie v. Montfort Jones Mem’l Hosp.,
 
 861 So.2d 1037, 1041(¶ 10) (Miss.2003).
 

 ¶ 23. Dotson’s surgery was performed on August 8, 2000. Her complaint was filed on August 31, 2001. An agreed amended scheduling order was entered on November 1, 2001, and it required Dotson to designate her expert witnesses no later than February 1, 2002. In Dotson’s response to Dr. Jackson’s interrogatories, which were filed on November 20, 2001, Dotson stated that the discovery request regarding the identity of her expert witness would be seasonably supplemented when her expert witness had been determined. Her designation of experts was not filed until March 26, 2002.
 

 ¶ 24. Dr. Jackson, claiming to have never seen that designation, filed a motion for summary judgment on September 4, 2002. He based the motion on his belief that Dotson had failed to designate an expert witness and because Dotson had failed to provide any medical testimony whatsoever supporting her claims. Dotson’s response to the motion for summary judgment contained her designation of experts, but it still did not provide any medical testimony from those experts.
 

 ¶ 25. The case was then delayed because of Dr. Jackson’s bankruptcy. Dotson was granted partial relief from the automatic stay in 2004. Next, Dotson moved to have the circuit judge removed, which further prolonged the case. Dr. Jackson’s motion for summary judgment was re-noticed before the new circuit judge to be heard on June 5, 2006.
 

 ¶ 26. At the time of the hearing, Dotson had yet to file an expert witness affidavit to support her claim. She failed to file such affidavit until nine days following the
 
 *236
 
 hearing. Rule 56(c) of the Mississippi Rules of Civil Procedure states that “[t]he adverse party [to a motion for summary judgment]
 
 prior to the day of the hearing
 
 may serve opposing affidavits.” (Emphasis added). Clearly, the affidavit of Dr. Reiss, which was filed nine days after the hearing, was untimely under this rule.
 

 ¶ 27. Dotson did not request a continuance from the circuit court until the day of the hearing — nearly five years after the complaint was filed. Rule 56(f) allows the court to order a continuance to allow affidavits to be obtained if they were unavailable for some reason. M.R.C.P. 56(f). The circuit court never ruled on Dotson’s request for a continuance. However, because the circuit court did not strike the untimely filed affidavit, the circuit court, in effect, allowed the additional time requested by Dotson. Nevertheless, because there is no indication that the motion for summary judgment was granted because of the evident untimeliness of the affidavit, we now look to see whether the affidavit itself sufficiently met Dotson’s burden of proof.
 

 b. Sufficiency of Dotson’s Expert Witness Affidavit
 

 ¶ 28. To present a prima facie case of medical negligence, Dotson had the burden to prove: (1) the requisite standard of care, (2) a breach of the standard of care, (3) a causal connection between the breach and the injury, and (4) the extent of her damages.
 
 McCaffrey v. Puckett,
 
 784 So.2d 197, 206(¶ 33) (Miss.2001). In
 
 Erby v. North Mississippi Medical Center,
 
 654 So.2d 495, 500 (Miss.1995), the supreme court held that “our general rule is that medical negligence may be established only by expert medical testimony, with an exception for instances where a layman can observe and understand the negligence as a matter of common sense and practical experience.”
 

 ¶ 29. Further, “Mississippi case law demands that in a medical malpractice action, negligence cannot be established without medical testimony that the defendant failed to use ordinary skill and care.”
 
 Sheffield v. Goodwin,
 
 740 So.2d 854, 856(¶ 5) (Miss.1999) (internal quotation and citation omitted). The supreme court has defined a physician’s duty to exercise ordinary skill in the following manner:
 

 Given the circumstances of each patient, each physician has a duty to use his or her knowledge and therewith treat through maximum reasonable medical recovery, each patient with such reasonable diligence, patience, skill, competence, and prudence as are practiced by minimally competent physicians in the same specialty or general field of practice throughout the United States, who have available to them the same general facilities, services, equipment, and options.
 

 Starcher v. Byrne,
 
 687 So.2d 737, 740 (Miss.1997) (citing
 
 Drummond v. Buckley,
 
 627 So.2d 264, 268 (Miss.1993);
 
 Palmer v. Biloxi Reg’l Med. Ctr.,
 
 564 So.2d 1346, 1354 (Miss.1990)).
 

 ¶ 30. Again, we quote the relevant portions of Dr. Reiss’s affidavit to determine whether it sufficiently proved the elements of medical malpractice set forth above:
 

 4. It is my opinion, to a reasonable degree of medical probability, that
 
 Dr. Paul Jackson breached the acceptable standard of care when, during his lapa-roscopic hysterectomy on Ms. Dotson, he cut her bladder.
 
 Even though Ms. Dotson underwent surgery to correct this error, it was still a breach of the standard of care for him to have cut her bladder in the first place, causing her injury.
 

 
 *237
 
 5. The standard of care requires that the operating surgeon
 
 should anticipate possible bladder injury during the performance of a vaginal or abdominal hysterectomy,
 
 especially if the dissection is difficult depending on the pathological condition in the pelvis. A surgeon should take the time to properly examine a patient before he or she is brought to the operating room. A proper abdominal and physical examination will demonstrate that structures within the pelvis are non movable.
 

 6. In the instant case, Dr. Jackson failed to conduct a proper examination of Ms. Dotson and
 
 failed to anticipate and prepare for the possible complication of cutting the bladder.
 

 7. However, even if a urologist was available and made the proper repair,
 
 it is still my opinion that Dr. Jackson breached the standard of care by cutting the bladder.
 

 (Emphasis added).
 

 ¶ 31. Dr. Reiss opined that Dr. Jackson breached the standard of care by cutting Dotson’s bladder during the hysterectomy, i.e., the mere existence of cut itself amounted to negligence. However, this opinion is contrary to Dr. Reiss’s opinion that a surgeon should anticipate possible bladder injury. He explicitly acknowledges that cutting the bladder is a possible and expected complication of this type of surgery.
 

 ¶ 32. The medical records in this case show that Dr. Jackson did, in fact, anticipate an inadvertent cystotomy (incision into the bladder). Dr. Jackson’s report of the operation states that “the bladder had been filled with a dilute Methylene blue solution which served as a marker for inadvertent cystotomy. Shortly after entering the peritoneum anteriorly, blue dye was seen to flow from a cystotomy in the bladder.” Thereafter, Dr. Curry, a urologist, was consulted to repair the cystoto-my.
 

 ¶ 33. Further, Dr. Reiss states that a proper exam of the abdominal and pelvic areas was not performed and that such exam would have shown the structures within the pelvis to be non moveable. However, he fails to explain how the exam done by Dr. Jackson was improper; nor does he state the requirements of a proper exam. This is again a conclusion contrary to the medical records stating that Dr. Jackson conducted a pelvic exam of Dotson before beginning her surgery that revealed a “freely mobile uterus.”
 

 ¶ 34. But more importantly, Dr. Reiss does not make the causal connection of Dr. Jackson’s failure to perform a proper abdominal exam with Dotson’s injury — the cutting of her bladder. Dr. Reiss does not state that, had Dr. Jackson performed the proper abdominal exam, Dr. Jackson would not have cut the bladder. Even if Dr. Jackson were to have performed this “proper” abdominal exam, it is clear from Dr. Reiss’s affidavit that Dr. Jackson would still be required to anticipate cutting the bladder.
 

 ¶ 35. Dr. Reiss’s affidavit in no way proves that Dr. Jackson breached the standard of care in this case. It simply concludes that Dr. Jackson breached the standard of care by cutting the bladder — a statement that is contrary to Dr. Reiss’s own opinion that cutting the bladder is an anticipated complication during this type of surgery and also contrary to the medical evidence presented in this case.
 

 ¶ 36. Accordingly, we find that the circuit judge properly found that Dotson failed to meet her burden of proof, through expert testimony, to demonstrate that Dr. Jackson was negligent. Because we find that the expert affidavit was both untimely filed and insufficient, Dr. Jackson’s motion
 
 *238
 
 for summary judgment was properly granted by the circuit court.
 

 2. Whether the layman’s exception to medical testimony applies in this case such that summary judgment was improper.
 

 ¶ 37. Dotson also claims that even if she did not establish a prima facie case of medical negligence through her medical expert, summary judgment was nonetheless improper because the layman’s exception applies. Specifically, she states that it is within the common sense of the fact-finder that the bladder should not be cut during a hysterectomy.
 

 ¶ 38. It is true that there is a layman’s exception in medical malpractice cases.
 
 Erby,
 
 654 So.2d at 500. The general rule that medical malpractice must be shown through expert medical testimony does not apply to “instances where a layman can observe and understand the negligence as a matter of common sense and practical experience.”
 
 Id.
 

 ¶ 39. However, this argument was raised by Dotson for the first time on appeal. Because the issue of the layman’s exception was never presented to the circuit court, we need not consider it here.
 
 Jones v. Fluor Daniel Servs. Corp.,
 
 959 So.2d 1044, 1048(¶ 15) (Miss.2007) (citing
 
 Anglin v. Gulf Guar. Life Ins. Co.,
 
 956 So.2d 853, 864(¶ 26) (Miss.2007)). Even so, it is difficult to see how the layman’s exception could apply here when Dotson’s own medical expert testified via affidavit that cutting the bladder is a complication to be anticipated during a hysterectomy.
 

 ¶ 40. Accordingly, we find that this issue is without merit. We find no error on the part of the circuit court; therefore, the order granting summary judgment in favor of Dr. Jackson is affirmed.
 

 ¶ 41. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 LEE AND MYERS, P.JJ., CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. KING, C.J., AND IRVING, J., NOT PARTICIPATING.