STEAMBOAT GENERAL WORTH, Plaintiff in Error, *v.* ·MARTIN O. HOPKINS, Defendant in Error.

1. ATTACHMENT AGAINST STEAMBOATS, &c.—In a proceeding against steamboats, and other water craft, under the statute, Hutch. Code, p. 288, art. 6, it is unnecessary to state in the affidavit to procure the attachment, that the owner, supercargo, or master, &c., is indebted to the plaintiff; it is sufficient, if it be averred that the vessel is indebted.

2. ATTACHMENT BOND.—An attachment bond is not defective, because, in its recital of the issuance of the writ of attachment, it omits to state that it was issued by a justice of the peace of the State of Mississippi, if it can be gathered from the whole record, that it was issued by a proper officer of this state.

3. WITNESS: AGENT COMPETENT AGAINST PRINCIPAL.—The master of a vessel is a competent witness for the plaintiff, in a proceeding against the owners, to render them liable for the misconduct of the officers of the vessel, in failing to account for money collected for plaintiff's use. His interest, if any, is to defeat the action, and not on the side on which he is called.

4. PRINCIPAL AND AGENT: MASTER OF VESSEL—POWER TO BIND OWNERS—PROOF OF USAGE AND CUSTOM.—The course of the usual employment of a vessel, is evidence of authority given by the owners to the master, to make for them, and in their behalf, a contract in relation to such employment. The plaintiff may therefore show, in a suit against the owners for the recovery of money collected by the officers of the vessel, on a draft placed in their hands by him at one port, to be conveyed.to and collected by them at another, that it was their usage and custom to employ the vessel in that kind of business.

5. SAME.—It is not true, as a general legal proposition, that the master of a vessel, engaged alone in the transportation of freight and passengers, has the right, by virtue of his office as master, to make contracts which would bind the owners, for the receipt and collection of bills of exchange, and the carrying of specie. To enable him to do so, his authority must be express, or implied from the usage and custom of the boat in that particular business.

IN error from the Circuit Court of Claiborne county. Hon. Stanhope Posey, judge.

Martin O. Hopkins, the defendant in error, sued The Steamboat General Worth, in *assumpsit*, for $75, for so much money had and received by the boat for the use of plaintiff, and also for money paid out, and advanced by plaintiff for the defendant. The suit was by attachment, under the statute; the affidavit of Hopkins stating an indebtedness to him by the boat, and the bond was taken payable to the boat, for the use of those interested, and the attachment writ issued against The Steamboat General Worth, by that name and description. The attachment bond recited the issuance of the writ of attachment by a justice of the peace cf Claiborne county, without mentioning the State. The sheriff seized the steamboat under the writ, and she was replevied by one Hendricks, who gave Giranet and Read, as his sureties.

The defendant pleaded *non-assumpsit*. The sureties on the bond, Giranet and Read, moved the court to quash the attachment; first, because the affidavit did not state an indebtedness by any human being; and second, because the bond was insufficient. They also moved the court to quash the replevy bond. These motions were overruled, and the cause was tried by a jury, in April, 1853.

On the trial, the plaintiff proved by William E. Muir, that he was captain of the General Worth in September, 1849, and that she was running as a regular packet from Vicksburg to New Orleans, touching at Grand Gulf. That plaintiff delivered to the clerk of said boat a draft on A. R. Nugent, of New Orleans, for $100, to be collected and paid over to him, Muir, to be by him paid out for said Hopkins: that only $25 of the money was ever paid by him, and that no charge was made for collecting the said draft. The defendant objected to this witness, on the ground of interest, but the court overruled the objection. Plaintiff also proved by M'Farlane, that at the time of the reception of said draft, it was the usage of the captain and clerk of said steamboat, to receive for collection in New Orleans, drafts and bills of exchange. To which proof of usage, the defendant objected, but his objection was overruled, and he excepted. On cross-examination, M'Far-

lane stated, that the business and trade of said steamboat was to carry freight and passengers for pay, and that such was her only business; and that the said usage of collecting drafts, &c., was only a personal accommodation by the officers of the boat to the parties for whom such collections were made, and that no charge was made therefor. Nugent and Cooper proved that the clerk of the boat collected the draft.

L. M'Donough, for defence, stated, that he was clerk of the boat at the time; that he received the draft, and collected it, and paid the money to the captain, W. E. Muir, and that the draft had nothing to do with the transactions of the boat. This was all the evidence. The jury found for the plaintiff the amount of his claim, and interest.

The instructions of the Circuit Court are sufficiently stated in the opinion of the court.

The defendant sued out this writ of error.

*George V. Moody*, for plaintiff in error, argued :—

1. That the affidavit was defective, in not stating that there was any indebtedness by any human being; that the steamboat, itself, could not be a debtor or creditor; it was an insensible chattel, and could not make a contract: it might, as any other chattel, be the means out of which a debt could be made, and might be proceeded against directly for this purpose, under our statute. The statute, (Hutch. Code, 288–290,) did not authorize the boat to become a debtor; it merely provided the means and remedy by which a debt due by its owners might be collected. The affidavit should have stated, that the owners, master, &c., were indebted to the plaintiff.

2. The attachment bond is defective, because it does not appear on the face of the bond, that any writ of attachment was ever prayed for, or issued out of any court in the State of Mississippi. See 1 How. Miss. R. 198.

3. The court erred in admitting the deposition of W. E. Muir, the master of the steamboat; he was clearly interested in the suit. He had been acting as agent for Hopkins, and was to receive the money and pay it out for him. If the plaintiff succeeds,

VOL. I.—45

he will be relieved of this liability. See Angel on Carriers, § 469, and notes and cases there cited. 2 Story, C. C. R. 49.

4. The court erred in charging the jury, that "the captain or clerk of the steamboat has the general authority to make all contracts or engagements to carry on the boat commodities, drafts, and money, with, or without hire or pay, unless it is shown that his authority in this case is restricted." This certainly is not law. Angel on Carriers, §§ 85–91; Abbott on Shipping, 165. This very point has been decided against the ruling of the court, in the case of *Mechanics'* v. *Traders' Bank,* 5 Annual La. R. 607. Also in 6 Wend. R. 335; *Wilcox & Fearn* v. *The .Steamer Philadelphia,* 9 La. R. 84; 2 Story, C. C. R. 49.

5. The proof of usage, was improperly admitted. It was not shown to be a usage of the boats in the trade, but only of this boat; nor was it shown that the usage rendered the owners liable in any case. Angel on Carriers, § 106; 2 Story, 49.

*H. T. Ellet,* for defendant in error.

This was an attachment against a steamboat, under the statute, (Hutch. Code, 288, art. 6, amended by the act on page 290, art. 8.) There being no assignment of errors, counsel can only conjecture the grounds relied on for reversal.

The following points were made in the court below:—

1. That the affidavit did not name any *human being* as responsible for the debt.

The statute was expressly designed to authorize suits against the *boat* by name, whether the plaintiff knew the names of the owners, &c., or not, and the suit in this respect, conforms strictly to the law.

2. That the bond did not recite that Claiborne county is in the State of Mississippi.

The bond conforms to the form prescribed by the Act of 1852, p. 82, § 2, in all its parts.

Besides, the affidavit, on which the bond was taken, is entitled "State of Mississippi, Claiborne county." The bond was taken at the same time by the same justice, and was returned with the affidavit, to the Circuit Court. The point of the objection is, that

it does not appear to be a bond taken *in this suit.* It is submitted that this does sufficiently appear. It is a bond taken in a suit brought in a court of this State, and is the foundation of the proceeding; and it would be the extreme of hypercriticism, to hold that it could be intended to relate to a suit in some other State or country.

3. The liability of the steamboat is denied, on the ground that the master of the boat could not subject the boat to any liability, in a case like the present.

The instructions must be considered with reference to the facts of the case.

The action was for money had and received by the boat, belonging to plaintiff. The proof shows that a draft was placed on board the boat by plaintiff, in the hands of the clerk, to be collected and paid to the captain, who was to employ the money to pay a debt of the plaintiff. The draft was collected, and the money received by the boat. There was contradictory proof, whether the money was ever paid over. The clerk testified that he paid the money to the captain, and the captain testified that it was not so paid; and the jury gave credit to the captain, and found for the plaintiff.

It was, then, not an action founded on the liability of a common carrier, for not carrying goods safely, but for money actually received by the boat, which went into its treasury, and of which the owners got the benefit.

It is shown to be the common usage of boats in this trade, to carry and collect bills, without charge—just as they carry shippers of freight and patrons of the boat, as passengers, without charge. Surely the fact, that in particular cases, the officers of the boat decline to receive pay, does not relieve the boat or owners from their liability as common carriers. In a recent case in the Supreme Court of the United States, an action was sustained against a railroad company for damages suffered by a passenger, who was travelling on the road by invitation, as a guest of the company. The suit was against the Reading Railroad Company, in Pennsylvania. The volume of Howard, containing the case, is not in the library, to be referred to.

But this is not an action for negligence, but for money actually received.

4. Muir was a competent witness: he could derive no advantage from the decision, nor would the record be evidence for or against him.

Smith, C. J., delivered the opinion of the court.

This was a proceeding by attachment, in the Circuit Court of Claiborne county, under the act, providing "a remedy against steamboats, and other water-craft." A verdict and judgment were rendered against the defendant below, by whom this writ of error is prosecuted.

Several exceptions are taken to the regularity of the proceedings:—First; it is insisted that the court erred, in overruling the motion to quash the writ of attachment; because, 1st. No debt is alleged, or claim asserted against the owner, master, or supercargo of the vessel, against which the writ was sued out; and 2nd, because the attachment bond was insufficient, illegal and void.

. 1. The affidavit is in strict conformity to the statutory regulations on the subject.

The statute of 1840 provides that, "whenever the owner, captain, master, supercargo, or other person in charge of any steamboat, &c., in any of the navigable waters of this State, shall or may be liable to any action for, or on account of any such steamboat, &c., to any person or persons, who may be ignorant of the name of such owner, &c.; or other person in charge thereof, or any or either of them, it shall be lawful for such person or persons, having a right of action as aforesaid, to prosecute the same by suit against such steamboat, &c., by its name, or by such description thereof, as will enable the officer executing the writ to identify the same." Hutch. Dig. 288, art. 6. The supplemental act of February, 1841, was passed expressly for the purpose of authorizing persons having a right of action against the owner, captain, &c., or persons having in charge any steamboat or other vessel, to proceed directly against such steamboat or other vessel by name, whether they know or not the name of the owner, captain, supercargo, or other persons having the same in charge. Hutch. Dig. 290, art. 8.

It was therefore unnecessary, under the statute, to allege in the affidavit, that the owner, captain, or other person having the vessel in charge, was indebted to the party suing out the attachment. The process authorized by the statute, was strictly a proceeding *in rem.* The levy of the attachment was consequently sufficient, and legal notice to the owner or persons interested in the boat, of the pendency of the suit. And as the attaching creditor could not succeed in subjecting the vessel for the satisfaction of his demand, unless upon proof, by legal and competent evidence, of a debt or claim against the owner, captain, or other person having the boat in charge, and for whose contract the vessel would be liable, no conceivable injury could result to any party interested in the attached vessel.

2. The second ground upon which the motion was based, is also untenable. It appears from the record, with sufficient certainty, that the attachment was issued from a court within this State, having jurisdiction of the subject-matter.

3. In the next place, it is insisted that the defendants' exception to the deposition of William E. Muir, was improperly overruled.

Muir was the captain in charge of the General Worth, at the date of the alleged transaction. And it is said that he was interested, as shown by the evidence, in the success of the attaching creditor. For, as it is argued, he would thereby get rid of his liability to the plaintiff.

If it be assumed that Muir's statements were true, he was not responsible to the attaching creditor for the contents of the draft. It is equally evident, upon his testimony, that he could not be made liable over to the owners, in the event of their being compelled to pay plaintiff's demand. On the other hand, if the statements of McDonough, the clerk, who was examined for the defendant, be taken as true, it is manifest that Muir would be responsible to the owners of the Worth, if a verdict and judgment should be rendered against them. It is manifest, therefore, that Muir was not interested, or that he was incompetent as a witness for the boat, having a direct interest in defeating the action. Angel, Law of Carriers, 440, § 469 ; 1 Greenl. Ev. 394. But Muir was ex-

amined by the plaintiff, and hence could not be objected to by the defendant.

4. A witness was offered by the plaintiff, who testified that the Worth, at the date of the transaction, was a regular packet on the Mississippi, running between Vicksburg and New Orleans, stopping regularly at Grand Gulf, and that it was the usage of the captain and clerk to receive for collection in New Orleans, drafts and bills of exchange. This testimony was excepted to, and the objection overruled. This action of the court is also alleged to be erroneous.

It was unquestionably competent for the plaintiff to prove the general custom or usage of steamboats, employed as packets between the cities of Vicksburg and New Orleans. Satisfactory proof, therefore, that it was the usage of such vessels to receive for collection, drafts drawn on the latter place, would, in the present case, have warranted the jury in determining the liability of the owners, in the absence of evidence showing that the collection of drafts and bills of exchange was no part of the business of the Worth, and that the plaintiff was cognizant of such fact. In such cases the law presumes the assent of the owners of a particular vessel to the prevailing usage, and holds them bound by its terms.

The conduct and management of vessels engaged in trade upon the Mississippi, are almost always intrusted to the master, whether he has, or has not, any interest in the boat under his charge. In the latter case, he is the confidential agent of the owners at large; in the former, of his copartners. In either case, the owners are bound to the performance of every lawful contract made by him relative to the usual employment of the vessel. From this, and the principle above stated, it is clear, that the course of the usual employment of the vessel is evidence of authority, given by the owners to the master, to make for them, and on their behalf, a contract relating to such employment; and consequently, a contract so made by him is esteemed in law a contract made by them. Abbott on Shipping, 157. And this principle is in nowise affected by the additional rule, that the master is also personally bound by such contract; for the law in favor of commerce, gives a twofold remedy; a remedy against the master as well as the owners.

Clear proof that such, as stated by the witness, was the usage

or custom of the officers of the General Worth, was *prima facie* sufficient to fix the liability of the owners. The court was hence, correct in overruling the objection.

5. It is objected further, that the court erred in charging the jury. The following is the instruction to which exception is taken, to wit: "The captain or clerk of the steamboat has the general authority to make all contracts or agreements, to carry on the boat all commodities, drafts or moneys, with or without hire or pay, unless it is shown that his authority was restricted in this case."

In regard to the acts of agents and persons in the employment of a carrier, the maxim, *respondeat superior*, applies fully. But the principal can only be bound to the performance of contracts made, or be held responsible for acts performed within the scope of the authority conferred. In the case before us, the owners of the Worth were bound to the performance of all contracts made in regard to the business of the boat, embraced by the authority conferred upon the persons intrusted with its management and control. And the extent of such authority will be inferred from the general usage of boats engaged in the trade, and from the usage or custom of the persons having the boat in charge.

In the case before us, the evidence shows that it was the usage and custom of the officers of the boat, to receive for collection drafts drawn on New Orleans. This was sufficient to raise the presumption that this usage was sanctioned by the owners, and embraced by the authority conferred; and, consequently, that they were bound by the contract in this case. Upon the hypothesis that this usage and custom of the boat was clearly established, the instruction was unobjectionable. But the question of the conclusiveness and sufficiency of the evidence to establish the usage of the boat, was within the exclusive province of the jury to decide. This seems to have been overlooked by the court. The jury were informed that, according to the law, the captain and clerk of the steamboat had the general authority to make any contract, or agreement, to carry on the boat all commodities, drafts, or moneys, with or without charge, unless it were shown that their authority in this case was restricted. This language of the judge

was necessarily based upon the assumption that the usage was established. Under the instruction, the jury were bound to find for the plaintiff, if they believed from the evidence, that the draft was delivered to the clerk or captain, that it was collected in New Orleans, and the proceeds not paid over to the plaintiff, without inquiry into the question of the authority of these parties to bind by their acts, the owners of the boat. The instruction assumed as proved, a material fact in issue between the parties, that is, the authority of the captain and clerk to bind the owners of the boat in the manner alleged. Upon any other supposition, the law was incorrectly laid down. For it is certainly not true, as a general legal proposition, that the master of a steamboat, engaged alone in the transportation of freight and passengers, without authority, express or implied, has the right to make contracts, which would bind the owners, for the receipt and collection of bills of exchange, and the carrying of specie.

For this error in the charge to the jury, the judgment will be reversed, and the cause remanded for a new trial.