# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-IA-02095-SCT

*THE COMMERCIAL BANK, KEMPER COUNTY,*
*DEKALB, MISSISSIPPI*

*v.*

*JAMES HEARN, INDIVIDUALLY, AS*
*ADMINISTRATOR OF THE ESTATE OF PRINCESS*
*ROSA HEARN, DECEASED, AS NATURAL*
*GUARDIAN AND NEXT FRIEND OF PARIS A.*
*HEARN, JENNIFER R. HEARN, AND JOSHUA*
*HEARN, ALL MINORS, AND ON BEHALF OF ALL*
*WRONGFUL DEATH BENEFICIARIES AND*
*STATUTORY HEIRS, KNOWN AND UNKNOWN OF*
*PRINCESS ROSA HEARN, DECEASED, AND*
*PATTIE A. HEARN*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/16/2004 |
| TRIAL JUDGE: | HON. ROBERT WALTER BAILEY |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | MICHAEL WAYNE STRAHAN |
| | J. RICHARD BARRY |
| ATTORNEYS FOR APPELLEES: | GRACE WATTS MITTS |
| | ROBERT H. COMPTON |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND RENDERED - 01/12/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     The question presented in this wrongful death suit is whether a bank manager with a flexible work schedule was within the scope of his employment while making deliveries for

the United Way during normal banking hours.  We hold that, under the facts of this case, he was not.

## BACKGROUND FACTS AND PROCEEDINGS

¶2.     In October 2000, the Commercial Bank of Dekalb employed Dexter Thornton to manage its Medical Center Branch.  In the afternoon hours of Thursday, October 5, 2000, while delivering a United Way pledge solicitation package to a local business, Thornton hit a vehicle driven by Pattie Hearn.  Pattie's infant child, Princess Rosa Hearn, died from injuries she sustained in the collision.

¶3.     Pattie and her husband, James, filed suit against Thornton, the Bank, and Progressive Gulf Insurance Company, seeking compensation for the wrongful death of Princess Rosa and the injuries sustained by Pattie.[1]  Following discovery, the Bank filed a motion for summary judgment, claiming Thornton was not acting within the scope of his employment at the time of the accident.  After the trial court denied the summary judgement motion, the Bank filed its petition seeking interlocutory appeal which we granted.

## STANDARD OF REVIEW

¶4.     This Court reviews *de novo* a trial court's grant or denial of summary judgment. ***Brooks v. Roberts***, 882 So.2d 229, 231 (Miss. 2004).  The party seeking summary judgement bears the initial burden of demonstrating there are no genuine issues of material fact to be decided by the trier of fact.  Miss. R. Civ. P. Rule 56.  Furthermore, all such evidentiary matters,

---

[1]The United Way of Meridian was later added as a defendant in the amended complaint with its liability stemming from the doctrine of *respondeat superior*.

including admissions in pleadings, answers to interrogatories, depositions and affidavits, must be examined in the light most favorable to the non-moving party. ***Davis v. Hoss***, 869 So.2d 397, 401 (Miss. 2004). The burden, however, is not entirely with the moving party. As this Court has clearly held, "[t]he non-moving party may not defeat the motion merely by making general allegations or unsupported denials of material fact.... The 'party opposing the motion must by affidavit or otherwise set forth specific facts showing that there are indeed issues for trial.'" ***Drummond v. Buckley,*** 627 So.2d 264, 267 (Miss. 1993) (citations omitted).

## ANALYSIS

¶5.     The Hearns assert the Bank is liable for Thornton's alleged negligence pursuant to the doctrine of *respondeat superior*. Both Thornton and the Bank claim Thornton's activities were outside the scope of his employment, and that no facts are present in the record which would allow a reasonable jury to find otherwise. This, according to the Bank, removes the case from the rubric of *respondeat superior*.

### *Respondeat superior*

¶6.     Since the mid-19th century, this Court has recognized the doctrine of *respondeat superior* which imputes an employee's negligence to the employer. However, for just as long, this Court has limited this vicarious liability to acts of the employee "performed within the scope of the authority conferred." ***The General Worth v. Hopkins,*** 1856 WL 3945, \*6 (Miss.Err.App 1856).

¶7.     From the outset of this litigation, the Bank has denied Thornton was acting within the course and scope of his employment. The Bank's summary judgement motion alleges that:

3

Dexter Thornton was not acting on behalf of, nor for the benefit of, Commercial Bank at the time of the accident. Rather, Mr. Thornton was outside the course and scope of his employment with Commercial Bank. Therefore, Commercial Bank should not be subject to any liability based on the actions of Dexter Thornton.

¶8. The Bank has consistently asserted in pleadings and discovery that Thornton was a salaried employee and an officer of the Bank and therefore was not required to work on a specific schedule. The Bank further presented sworn testimony that Thornton's solicitation for the United Way was a wholly personal errand, outside the course and scope of his employment. It is undisputed that Thornton used his personal vehicle to make the deliveries for the United Way and that the Bank did not reimburse him for mileage. It is further undisputed that the Bank was not a member of United Way and never ordered or approved Thornton's activities for the United Way.

¶9. The Hearns provide the following list of "additional facts [that] create a genuine issue whether Commercial Bank is liable under the doctrine of *respondeat superior*":

1) Defendant Thornton's deposition testimony was that he was a member of the Downtown Optimist Club;

2) Commercial Bank paid his membership dues for the Downtown Optimist Club;

3) Mr. Thornton attended the United Way kickoff campaign during business hours in the year 2000;

4) A United Way volunteer called Thornton, while at work, and asked him to deliver 5 packages for United Way;

5) A United Way volunteer delivered the United Way packages to Dexter Thornton at Commercial Bank;

4

6) Johnny Brewer, president of Lauderdale County operations, came to the accident scene after the accident happened on October 5, 2000;

7) Dexter Thornton believed he had delivered other pledge packages for United Way within regular business hours of 8 to 5 and regular work day [sic] of Monday through Friday;

8) In the course and scope of his membership in the Downtown Optimist Club, he worked at fund raisers, including a Pancake Jubilee, which would have been after 8 a.m. during business hours on a regular work day;

9) The Downtown Optimist Club directed a golf program during work hours and he would be there during a work day to attend the fund raiser;

10) Dexter Thornton was delivering the United Way package during work hours when this accident occurred;

11) While Commercial Bank had no policy to be a part of civic organizations it had no policy against being a part of civic organizations;

12) Dexter Thornton admitted he was a full time employee of Commercial Bank at the time this accident occurred on October 5, 2000;

13) Dexter Thornton admitted the hour of 2 p.m. to 3 p.m. on October 5, 2000 was within his normal working hours;

14) Commercial Bank, admitted that Dexter Thornton was a full time employee of Commercial Bank on October 5, 2000;

15) Commercial Bank's employee Handbook Mission Statement states the Bank's Mission, in part, is to "be a responsible citizen and business leader of our community by earning and keeping a reputation of profitability, financial soundness and unquestioned fiscal integrity, and not knowingly taking actions that are adverse to the best interest of our community, its businesses, or its families."

16) The Employee Handbook further stated that Banking Hours were 8 a.m. daily, Monday through Friday, and reflected that employees were expected to remain at Commercial Bank until closing except during their lunch hour;

5

17) The proof was that if an employee joined a civic club and Commercial Bank deemed it reasonable, they would reimburse them for it;

18) Michael Dudley (president of the Bank) testified he was to begin serving on the Red Cross board on September 25, 2003 and that he had been a member of various Boards indicating community involvement was promoted by Commercial Bank;

19) In October 2000, Michael Dudley was a member of the Dekalb Lion's Club and Commercial Bank paid his dues;

20) Michael Dudley testified he was the only person able to hire officers, although he did not hire Dexter Thornton because Jeff McCoy was president when Dexter Thornton was hired;

21) Michael Dudley testified that community involvement would factor into an officer being hired;

22) Michael Dudley testified that Commercial Bank had no set policy regarding requests for donations and Johnny Brewer would make the decision for donations in Lauderdale County;

23) Michael Dudley knew Commercial Bank had donated to Boy Scouts;

24) Michael Dudley stated there was nothing written to say the Bank encouraged participation in community activities but each bank officer is judged based on what they can produce; how they do that is up to them and that bringing in new customers is one factor on which they are judged;

25) Michael Dudley stated that meeting others and making a positive impression might result in additional business and bringing in additional business is something a bank officer would be judged upon as well as operating the office;

26) Michael Dudley testified that what Dexter Thornton was doing that day with United Way could have been positive for the community and he had never heard anything negative about United Way. Depending on the individual, this work could cast a positive light on the bank through its employee;

6

27) Michael Dudley stated he did not see anything negative about Dexter Thornton delivering United Way packages;

28) Michael Dudley stated that Commercial Bank's Mission Statement of being a responsible citizen and business leader would encompass numerous things, and delivering a United Way package would not be outside the parameters of being a responsible citizen.

¶10. The most that can be presumed from these averments, even if all are true, is that the Bank may have indirectly benefitted from Thornton's activities at the time of the accident. An indirect benefit to the employer, however, is not the appropriate test for *respondeat superior*.

¶11. The Hearns also say that *respondeat superior* is applicable because Thornton's accident was within "the spatial and time limits of his employment and . . . of the same general nature as the conduct authorized or incidental to his employment." In support, the Hearns cite two cases: ***Adams v. Cinemark USA, Inc***. 831 So.2d 1156 (Miss. 2002), and ***Priester & Sons v. Bynum's Dependents***, 244 Miss. 185, 141 So.2d 246 (Miss. 1962).

¶12. ***Priester & Sons*** provides no support for the Hearns' position, as it involves a dispute over whether a Workmen's Compensation Act amendment applies in a case where the employee was found dead at work. Nor does this Court's holding in ***Adams*** support the Hearns' position. In that case, Catherine Adams attempted to purchase tickets to an R-rated movie for her fifteen year-old sister and her sister's fourteen year-old friend. When box office employee Weigelia Thomas refused to sell tickets for the two underage patrons, Adams became upset, and Thomas summoned the manager. Meanwhile, Adams and Thomas had a heated exchange and, at some point, Thomas left the box office and assaulted Adams. This

7

Court affirmed the grant of summary judgment to Cinemark by finding that Thomas' actions were not within the course and scope of the employment of a box office cashier. This Court's response to Adams' assertion that Thomas' actions "may have been fueled by the responsibility vested in her by Cinemark" was that "unsupported speculation and allegations are not sufficient to defeat a motion for summary judgment. (citations omitted)." ***Id.***

¶13. This Court's recent decision in ***Gulledge v. Shaw***, 880 So.2d 288 (Miss. 2004), more accurately addressed the law regarding the scope of an employee's employment:

> The inquiry is not whether the act in question, in any case, was done, so far as time is concerned, while the servant was engaged in the master's business, nor as to mode or manner of doing it...but whether, from the *nature of the act itself* as actually done, it was *an act* done in the master's business, or wholly disconnected therefrom by the servant, not as servant, but as an individual on his own account. ***Holliday v. Pizza Inn, Inc***., 659 So.2d 860, 864 (Miss.1995) (quoting ***Canton Cotton Warehouse Co. v. Pool***, 78 Miss. 147, 28 So. 823 (1900) (emphasis added)). Moreover, In determining whether *a particular act* is committed by a servant within the scope of his employment, the decisive question is not whether the servant was acting in accordance with the instructions of the master, but, was he at the time *doing any act* in furtherance of his masters' business? If a servant, having completed his duty to his master, then proceeds to prosecute some private purpose of his own, the master is not liable; but if the servant, while engaged about his master's business, merely deviates from the direct line of duty to accomplish some personal end, the master's responsibility may be suspended, but it is re-established when the servant resumes his duty. ***Holliday***, 659 So.2d at 864-65 (quoting ***Barmore v. Vicksburg, S. & P. Ry.***, 85 Miss. 426, 38 So. 210 (1905) (emphasis added)).

***Gulledge v. Shaw,*** 880 So.2d at 295.

¶14. In ***Gulledge***, with only one justice dissenting in part, we approved summary judgement for a bank employee who, while on duty at the bank, notarized a forged signature on a document out of the presence of the purported signatory. Even though we recognized the

employee's responsibilities at the bank "included performing the duties of a notary public," *Id*. at 291, we nevertheless concluded, as a matter of law, that notarizing the document "was not in furtherance of the bank's business – rather, it was a personal act." *Id*.

¶15.    The dissent has concluded that the isolated phrase from *Gulledge*, "was he at the time *doing any act* in furtherance of his masters' business" entitles Hearn to a trial because a reasonable jury might conclude Hearn's volunteer charitable work was in furtherance of the bank's business.  However, *Gulledge* says much more.

¶16.    Citing with approval *White's Lumber & Supply Co. v. Collins*, 186 Miss. 659, 191 So. 105 (1939), the *Gulledge* Court recognized that *respondeat superior* liability requires a finding that the employee was "in the course of the performance of the character of work which the employe [sic] was appointed to do." *Gulledge*, 880 So. 2d at 295.  There is not even a hint of evidence in the record before us that Hearn's volunteer charitable work was "the character of work" Hearn was employed to perform.  See also *Holliday v. Pizza Inn, Inc*., 659 So. 2d 860 (Miss. 1995) (employee's act "as actually done" must be "in the master's business").

¶17.    *Gulledge* points out that we look to the act committed by the employee, rather than some indirect benefit the employer may have received from a specific act not part of the duties of employment.  The Hearns have produced no evidence, and indeed do not even argue, that Thornton's duties as an employee of the Bank included delivering solicitation packages to local businesses for the United Way.  Rather, the Hearns claim this activity, though not specifically authorized, was indirectly beneficial to the Bank, and a reasonable jury could believe that the

9

persons receiving the solicitation packages might think well of the Bank for allowing its employee to engage in charitable work, and this good will might lead to additional business for the Bank. We find no case which carries the doctrine of *respondeat superior* so far as this.

¶18. In ***Marter v. Scott***, 514 So.2d 1240, 1242-43 (Miss. 1987), this Court cited with approval § 228 Restatement (Second) of Agency (1958), which provides:

> (1)  Conduct of a servant is within the scope of employment if, but only if:
>
>> (a)  it is of the kind he is employed to perform;
>>
>> (b)  it occurs substantially within the authorized time and space limits;
>>
>> (c)  it is actuated, at least in part, by a purpose to serve the master, and
>>
>> (d)  if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
>
> (2)  Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

¶19. The comment to § 228 explains that "not all physical acts of the kind authorized performed within the time and at the place of service are within the scope of employment, since only those which the servant does in some part for the purpose of giving service to the master are included."

¶20. We find the Hearns have failed to produce evidence which satisfies requirement of § 228 (1)(a). Thornton's "conduct" was delivering solicitation packages for the United Way. No proof is before us that Thornton was "employed to perform" that kind of "conduct." Nor is it

10

enough to say that Thornton's good deeds might have resulted in new customers for the Bank. A test so broad as this would render most employers vicariously liable for virtually all of their employees' activities. For instance, Thornton's visit to the doctor for a check-up, and his shopping trip to the mall could both certainly result in new business for the Bank, since (the plaintiff would argue) doctors and business persons often reciprocate by doing business with their patients or customers. And it could be forcefully argued that the Bank's best interest is well served when employees obtain regular medical check-ups and stay healthy. The imposition of vicarious liability under these examples is no more unacceptable than the proposition that the Bank should be held vicariously liable because Thornton's charitable work might result in new business for the Bank.

¶21. Stated differently, we hold that while there may be substantial evidence that the Bank encouraged Thornton's participation in charitable activities and benefitted therefrom, far more is required to impute liability to the Bank under the doctrine of *respondeat superior*. The pertinent question is whether Thornton was engaged in the course and scope of his employment while delivering packages for the United Way. The facts submitted by the Hearns, if all true, simply establish that: (1) Thornton engaged in other charitable activities during normal banking hours; (2) the Bank's president personally engages in charitable activities; (3) the Bank itself contributes to some charitable organizations (although not the United Way); (4) the Bank has no personal enmity against the United Way; (5) community participation is a factor in an officer's hiring but not retention; (6) officers are judged by how much they produce and their office management; (7) no written policy requires or encourages community

11

participation; (8) an individual soliciting for a charity *might* put that individual in a positive light which *could* increase the Bank's business.

¶22. Testing this case under § 228 Restatement (Second) of Agency (1958), discussed *supra*, we find no evidence produced by the Hearns or otherwise to show that making charitable solicitations for the United Way is the kind of work Thornton was employed by the Bank to perform.[2]

¶23. By our holding today, we reenforce our previous holdings in **Gulledge** and **Marter**, and we again cite with approval 228 Restatement (Second) of Agency, which all require an evaluation of the employee's act, itself, rather than a perceived, possible, indirect benefit to the employer.

*Summary judgment*

¶24. Counsel for the Hearns argued that summary judgment is inappropriate in this case, partly because facts might be developed at trial which more clearly show the Bank's approval and involvement in Thornton's charitable activities. Not only is this argument contrary to our established case law, it demonstrates a common misunderstanding of the procedure and requirements under the current version of Rule 56 of the Mississippi Rules of Civil Procedure.

---

[2]Our decision today is not contrary to decisions from many other jurisdictions which, though not binding upon us, are instructive. See **Arbelaez v. Just Brakes Corp**., 149 S.W.3d 717, 720 -721 (Tex.App.-Austin 2004) (proof required that employee's act was "for the accomplishment of the object for which the employee was employed."); **Horne v. DePetrillo**, 2005 WL 883680, at *2 (D.N.H. 2005) (conduct must be the "kind he or she is employed to perform."); **Saleh v. Wertzbaugher,** 2004 WL 2035600, at *1 (Ohio App. 6 Dist. 2004) (requirement that "employee was doing the work he was employed to do at the time of his negligence.").

12

*See* ***Adams v. Cinemark USA, Inc***. 831 So.2d 1156, 1159 (Miss. 2002); ***Reynolds v. Amerada Hess Corp.***, 778 So.2d 759, 765 (Miss. 2000); ***Herrington v. Leaf River Forest Prods., Inc.***, 733 So.2d 774, 779 (Miss. 1999); ***Crystal Springs Ins. Agency, Inc. v. Commercial Union Ins. Co.***, 554 So.2d 884, 885 (Miss. 1989). See also ***Hurst v. Ala. Power Co.***, 675 So.2d 397, 400 (Ala. 1996); ***Rice v. Hodapp***, 919 S.W.2d 240, 243 (Mo.1996); ***Darrah v. Bryan Mem'l Hosp.***, 253 Neb. 710, 571 N.W.2d 783, 786 (1998); ***Howard Hughes Med. Inst. v. Gavin***, 96 Nev. 905, 621 P.2d 489, 491 (1980); ***Paradigm Hotel Mortgage Fund v. Sioux Falls Hotel Co.***, 511 N.W.2d 567, 569 (S.D.1994); ***Wriston v. Raleigh County Emergency Servs. Auth.***, 205 W.Va. 409, 518 S.E.2d 650, 662 (1999).

¶25. Rule 56 provides a defendant may move for summary judgment at any time. Miss. R. Civ. P. Rule 56(b). Subsection (c) allows the plaintiff to file affidavits in response to the motion. It then provides:

> The judgment sought *shall be rendered forthwith* if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Miss. R. Civ. P. Rule 56(c). The rule does not provide for evidence which *might* be introduced or developed at trial. The party resisting summary judgement must produce any such evidence in opposition to the motion. It is thus incumbent upon a plaintiff to respond to a motion for summary judgment by demonstrating material factual disputes. The comment to Rule 56 provides that summary judgment "serves as an instrument of discovery in calling forth quickly

13

the disclosure on the merits of either a claim or defense on pain of loss of the case for failure to do so." This interpretation of Rule 56 is clearly supported by *Davis* and *Drummond*.

¶26. In applying Rule 56 to the facts and procedural background of this case, we find, as discussed supra, that the Bank provided deposition testimony and other evidence that Thornton was not acting within the scope of his employment by delivering the United Way solicitation packages. The Hearns were then required to show the existence of genuine disputed issues of material fact, not by simply disagreeing with the Bank, but rather by producing evidence that Thornton was, indeed, acting within the scope of his employment. This required evidence on each of the required elements, including some evidence to show that Thornton's "conduct," that is, his delivery of the United Way packages, was the kind of conduct he was "employed to perform." See *Marter*, 514 So.2d at 1242-43, citing with approval § 228 Restatement (Second) of Agency (1958). No such evidence was produce by the Hearns. Rule 56 provides that, under such circumstances, judgment "shall be rendered forthwith." Thus, the trial judge committed reversible error in failing to grant the Bank's motion for summary judgment.

## CONCLUSION

¶27. The Hearns' assumption or allegation that solicitation on behalf of charities such as the United Way was part of Thornton's employment responsibilities, is unsupported by any affidavit or evidence placed before the trial court. Unsupported allegations and the prospect that such evidence may be produced at trial, do not entitle the Hearns to a jury determination of whether Thornton was acting within the course and scope of his employment. The trial court's denial of summary judgment is reversed and rendered.

14

¶28.    **REVERSED AND RENDERED**.

**SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON AND RANDOLPH, JJ., CONCUR.  EASLEY AND GRAVES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION.  DIAZ, J., NOT PARTICIPATING.**