980 So.2d 944 (2007)
Bobby D. BASS, Jr., Appellant
v.
Richard Hunt BOBO, M.D., Appellee.
No. 2006-CA-00843-COA.
Court of Appeals of Mississippi.
September 25, 2007.
Rehearing Denied January 15, 2008.
*947 James M. Priest, Jr., Robert B. Ogletree, Jackson, attorneys for appellant.
Chris J. Walker, Ridgeland, Rachel L. Wilson, attorneys for appellee.
Before MYERS, P.J., BARNES and ROBERTS, JJ.
MYERS, P.J., for the Court.
¶ 1. Bobby D. Bass, Jr. brought a medical malpractice suit against Dr. Richard Hunt Bobo alleging substandard pre-operative evaluation and post-operative care, as well as a lack of informed consent. Before trial, Bass moved to disqualify the defense's expert witness; however, his motion was denied. Trial proceeded and the jury returned a verdict in favor of Dr. Bobo. Bass moved the trial court for a judgment notwithstanding the verdict (JNOV) or for a new trial. Both of Bass' post-trial motions were denied. Bass now appeals the trial court's ruling regarding the pre- and post-trial matters. Finding no error in the decision of the lower court, we affirm.

UNDERLYING FACTS
¶ 2. Bass was born in 1973 with severe birth defects relating to the formation of his brain and spinal canal. These abnormalities included myelomeningocele, a form of spina bifida; Chiari II malformation, an abnormality within the spinal canal; and hydrocephalus, an excessive increase in fluid causing pressure to be placed on the brain. Due to these conditions, shortly after Bass' birth, a shunt was implanted to relieve fluid pressure of the brain. In 1997, Bass began experiencing a loss of sensation and strength in his hand and sought treatment from Dr. Bobo, a neurosurgeon. Dr. Bobo opined that surgery would be necessary. In February of 2001, Dr. Bobo surgically performed a suboccipital decompression to release fluid pressures of the brain. Five days following the surgery, Bass' shunt failed, causing hydrocephalus and subsequent brain damage.
¶ 3. During trial, Bass argued to the jury that Dr. Bobo's failure in his pre-operative evaluation to ensure the shunt was operating properly, as well as his post-operative care, caused the injuries. Dr. Bobo argued in his defense that he tested the shunt function and confirmed its working order every time he treated Bass, and that the shunt's failure could not have been anticipated by him prior to Bass' discharge. The dispute was resolved by the jury, which found in favor of Dr. Bobo. Bass now appeals the trial court's denial of his motion to strike the testimony of Dr. Bobo's expert witness, as well as the denial of his motions for a JNOV and a new trial.

DISCUSSION
I. EXPERT TESTIMONY
¶ 4. Before trial, Bass moved the circuit court to exclude the expert witness testimony of Dr. Bobo's designated expert, Dr. Moses C. Jones, under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and Mississippi Transportation Commission *948 v. McLemore, 863 So.2d 31 (Miss.2003), asserting that the testimony was unreliable because his medical opinions were based upon unreliable principles and in conflict with Bass' provided medical literature. At trial, the objection was renewed and Bass sought to prohibit Dr. Jones from testifying based on his lack of experience in treating Chiari II patients and surgically performing the suboccipital decompression.
¶ 5. The trial court has the discretion to determine whether a witness is sufficiently knowledgeable to be considered an expert. Nunnally v. R.J. Reynolds Tobacco Co., 869 So.2d 373, 384(¶ 36) (Miss.2004) (citations omitted). "The standard of review for the admission or suppression of evidence in Mississippi is abuse of discretion." Troupe v. McAuley, 955 So.2d 848, 855(¶ 19) (Miss.2007) (quoting Poole v. Avara, 908 So.2d 716, 721(¶ 8) (Miss.2005)) (citing McLemore, 863 So.2d at 34(¶ 4)). "The trial judge has the sound discretion to admit or refuse expert testimony; an abuse of discretion standard means the judge's decision will stand unless the discretion he used is found to be arbitrary and clearly erroneous." Id.
¶6. "The rule is that the expert must exercise the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Troupe, 955 So.2d at 858(¶ 25) (citing Poole, 908 So.2d at 724(¶ 16)) (citing McLemore, 863 So.2d at 37-38(¶ 15)). The plain language of Mississippi Rule of Evidence 702 considers a witness "qualified as an expert by knowledge, skill, experience, training, or education" and allows the witness to testify and offer opinions if his "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." M.R.E. 702. The framework employed in determining whether particular proffered expert testimony meets the requirements of Mississippi Rule of Evidence 702 necessarily involves the trial court's first determination of whether the expert testimony is relevant. McLemore, 863 So.2d at 40(¶ 25) (adopting federal framework of Daubert, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469). If the trial court finds that the proffered testimony is relevant, then the court next considers whether the proffered testimony is reliable. Id. Each determination by a trial court regarding the admissibility and reliability of expert testimony is a fact intensive one, and "requires immersion in the subject matter of the case." McLemore, 863 So.2d at 40(¶ 25).
¶ 7. Bass argues that Dr. Jones' experience in treating patients with Bass' conditions is limited at best, because he has treated less than ten Chiari II patients and has only performed the decompression surgery that Dr. Bobo performed three or four times. Recently, our supreme court considered whether a trial court erred in refusing to qualify an expert in a medical malpractice case. Troupe, 955 So.2d 848. Two factors the court discussed in upholding the trial court's disqualification were that the proffered expert had never performed the type of surgery at issue in the case and never had privileges to perform the surgery. Id. at 857(¶ 24). However, the court did not establish a requisite number of surgeries that a physician must perform before one may be qualified as an expert. We decline to do so today, as well. The trial court found that Dr. Jones' experience in treating Chiari II patients and performing the decompression surgery was sufficient to qualify him as an expert. We cannot find error in this decision.
¶8. Bass additionally sought to prohibit Dr. Jones from providing testimony opining that Dr. Bobo complied with the standard of care for assessing pre-operative *949 shunt function by observing a lack of clinical symptoms of hydrocephalus. Bass argues the trial court erred in admitting Dr. Jones' testimony because his opinion is in conflict with the medical literature provided by Bass establishing that diagnostic tests should be performed to rule out shunt malfunction before surgery. Our review of the record, however, finds that Dr. Jones provided testimony utilizing part of the medical literature Bass brings into issue. Dr. Jones testified that, within the literature provided by Bass, no treatment standards or guidelines for the particular pre-operative procedures are listed. In fact, Dr. Bobo pointed out that the literature to which Bass refers does not set a standard by which a surgeon should pre-operatively comply, but instead recommends that the surgeon should act according to his or her individual experience, training, and personal beliefs due to a lack of sufficient evidence to support treatment standards. Thus, Dr. Bobo argues that his expert's testimony was not in conflict with the presented medical literature regarding the matter.
¶ 9. As stated supra, a finding of expert testimony reliability is fact-intensive and dependent on a case-by-case review and determination. After attorneys for both Bass and Dr. Bobo questioned Dr. Jones regarding his qualifications, the trial court ultimately found that Dr. Jones was qualified to testify as an expert on behalf of Dr. Bobo. While Bass argues that Dr. Jones' testimony is unreliable because it is in conflict with the standards required by the provided medical literature, the record reflects that Dr. Jones sufficiently overcame the alleged conflict. Based on the record before us, we cannot find that the trial court erred in qualifying Dr. Jones to render an expert opinion regarding the standards of care involved in Chiari II patient's suboccipital surgery.
II. JNOV
¶10. Bass asserts that the denial of his motion for JNOV was in error because the evidence presented at trial was insufficient to support a jury's finding that Dr. Bobo did not breach the applicable standard of care in assessing the shunt function prior to releasing Bass post-surgery. Dr. Bobo argues that the evidence at trial sufficiently showed that Bass' shunt function was properly evaluated post-surgery and prior to Bass' release, and, thus, because the conflict in the presented evidence created a question of fact for the jury to determine, a grant of JNOV was not warranted.
¶ 11. A trial court's denial of a motion for JNOV challenges the legal sufficiency of the evidence presented. Boose v. State, 851 So.2d 391, 394(¶ 13) (Miss.Ct. App.2003). When reviewing a trial court's denial of a motion for JNOV, we are to consider the evidence in the light most favorable to the non-movant, giving the benefit of all favorable inferences that may be reasonably drawn from the evidence. Dilworth v. State, 909 So.2d 731, 736(¶ 17) (Miss.2005). "If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render." Buskirk v. Elliott, 856 So.2d 255, 265 (Miss.2003) (quoting Steele v. Inn of Vicksburg, 697 So.2d 373, 376 (Miss.1997)). "On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required." White v. Stewman, 932 So.2d 27, 32 (Miss.2006) (quoting Steele, 697 So.2d at 376).
*950 ¶ 12. Bass bore the burden of proof to show that Dr. Bobo either acted or failed to act in accordance with the applicable standard of care and thereby committed medical malpractice. The rendered verdict indicates that the jury did not find that Bass proved his case against Dr. Bobo. When Bass moved for a JNOV, Bass essentially sought a ruling from the trial court that the facts so overwhelmingly leaned in favor of finding that Dr. Bobo committed malpractice that reasonable jurors could not have arrived at any other conclusion. The trial court disagreed and denied Bass' motion.
¶ 13. Whether or not the actions or inactions of Dr. Bobo before and after the surgery constituted malpractice essentially boils down to a "battle of the experts," through which the jury determined the victor to be Dr. Bobo. Evidence was presented by experts on both sides, but ultimately the jury found that Dr. Bobo's position prevailed. The jury found that Dr. Bobo did not breach the standard of care when pre-operatively assessing Bass' condition and post-operatively monitoring Bass' recovery. A trial court cannot disturb a verdict without more than present in this case. We, therefore, find that the motion for JNOV was properly denied.
III. NEW TRIAL
¶ 14. Bass argues that the trial court erred in failing to grant a new trial, arguing that the jury's verdict in favor of Dr. Bobo was against the overwhelming weight of the evidence presented at trial showing that Dr. Bobo failed to receive Bass' informed consent to the surgery with the knowledge that hydrocephalus is a known risk of suboccipital decompression surgery. Dr. Bobo points out that during trial two neurosurgeons testified in conflict regarding the necessity of disclosing the risk of hydrocephalus occurring as a result of a suboccipital decompression, and argues that a new trial was not warranted because the decision to give more weight to Dr. Bobo's position was within the jury's ambit.
¶ 15. Motions for a new trial challenge the weight of the evidence presented to the jury, and we will only reverse if we find that the lower court abused its discretion in denying the motion. Dilworth, 909 So.2d at 737(¶ 20). We view the evidence in the light most favorable to the verdict and will only grant a new trial in exceptional cases where the evidence preponderates heavily against the verdict. Bush v. State, 895 So.2d 836, 844(¶ 18) (Miss.2005). "When testimony is contradicted, [an appellate court] will defer to the jury, which determines the weight and worth of testimony and the credibility of the witness at trial." Venton v. Beckham, 845 So.2d 676, 684 (Miss.2003) (quotation omitted). "Moreover, when the evidence is conflicting, we defer to the jury's determination of the credibility of witnesses and the weight of their testimony." Id. (quoting Ducker v. Moore, 680 So.2d 808, 811 (Miss.1996)). The verdict will stand unless an unconstitutional injustice would result. Bush, 895 So.2d at 844(¶ 18).
¶ 16. The ground asserted for a new trial, in the instant case, is that the verdict was clearly contrary to the law and the evidence presented. This is a case in which the jury was faced with conflicting expert testimony on the issue of informed consent, which it resolved in defendant's favor. In finding for the defendant, the jury apparently placed more weight and worth in the testimony of the defendant's expert, rather than the plaintiff's expert. In evaluating the decision of the trial court in denying the motion for a new trial, we recognize that it is the province of the jury to resolve conflicting inferences from the *951 evidence. We agree with the lower court that a new trial was not warranted in this case and affirm the denial of Bass' motion for a new trial.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.