KING, C.J.,
 

 for the Court.
 

 ¶ 1. Vincent P. Pontillo filed suit against The Warehouse Bar and Grill (The Warehouse) for negligence, negligence per se, respondeat superior, negligent supervision, and negligent hiring. The Circuit Court of Hinds County granted summary judgment in favor of The Warehouse, finding no genuine issue of material facts. The trial court also granted The Warehouse’s motion to strike the affidavit of Pontillo’s expert witness. Aggrieved, Pontillo appeals, arguing two assignments of error: (1) the trial court erred in granting summary judgment in favor of The Warehouse, and (2) the trial court erred in striking the affidavit of expert witness, Dr. Kimberly Kraft Moulds. Finding no error, we affirm.
 

 FACTS
 

 ¶ 2. On March 18, 2005, Wayne Gilpa-trick, while patronizing The Warehouse, agreed to operate the karaoke equipment, because the person employed to perform this job did not come to work. Gilpatrick set up the equipment, played the songs requested by the patrons, sang when other patrons would not, and disassembled and stored the equipment when the bar closed. Gilpatrick left The Warehouse sometime after midnight. As Gilpatrick was traveling east on Highway 18 in Hinds County, Mississippi, he veered across the center lane into the westbound traffic and collided head on with the vehicle in which Pontillo was a passenger. Because of the severity of their injuries, both Pontillo and Gilpa-trick were transported to a local hospital.
 

 ¶ 3. While investigating the scene of the accident, law enforcement discovered a vodka bottle on the floorboard and smelled alcohol emitting from the vehicle driven by Gilpatrick. As a result of these findings, the authorities requested a blood sample from Gilpatrick to determine his blood-alcohol concentration. When Gilpatrick refused to give a blood sample, the authorities were able to obtain a search warrant four hours later to extract Gilpatrick’s blood to determine his blood-alcohol concentration. Results of the blood analysis indicated that Gilpatrick had a blood-alcohol concentration of 0.07%.
 

 ¶ 4. Thereafter, a Rankin County grand jury indicted Gilpatrick for D.U.I. Mayhem. In October 2006, Gilpatrick was tried and convicted on three counts of D.U.I. Mayhem. On November 9, 2006, Pontillo filed a complaint against Gilpa-trick; The Warehouse; Wayne Mays d/b/a/ The Warehouse; and Brandon Vinson, the possible owner of the vehicle driven by Gilpatrick, alleging negligence, negligence per se, gross negligence, respondeat superior, negligent supervision, and negligent hiring. On March 20, 2006, The Warehouse and Mays filed a motion for summary judgment. On May 14, 2007, the trial court conducted a hearing on the motion. At the conclusion of the hearing, the trial judge ruled that the motion was
 
 *799
 
 premature and ordered more discovery. Pontillo was also granted leave to amend the complaint. In the interim, witnesses were deposed, and Mays, individually, and Vinson, individually, were dismissed from the complaint.
 

 ¶ 5. On December 19, 2007, a second motion for summary judgment and a motion to strike the affidavit of Pontillo’s expert witness, Dr. Moulds, was filed. On March 7, 2008, the trial court struck Dr. Moulds’s affidavit, granted summary judgment in favor of The Warehouse, and dismissed the case with prejudice.
 

 I. Summary Judgment
 

 ¶ 6. In determining whether the trial court was proper in granting summary judgment, this Court employs a de novo standard of review.
 
 Owen v. Pringle,
 
 621 So.2d 668, 670 (Miss.1993). Summary judgment is proper if all evidentiary matters before the trial court, which includes admissions in the pleadings, answers to interrogatories, depositions, affidavits, and etc., when viewed in the light most favorable to the party against whom the motion has been made, reveals that there exists no genuine issue of material facts.
 
 Newell v. Hinton,
 
 556 So.2d 1037, 1041 (Miss.1990). “A material fact is one which resolves any ‘of the issues, properly raised by the parties.’ ”
 
 Strantz ex rel. Minga v. Pinion,
 
 652 So.2d 738, 741 (Miss.1995).
 

 ¶ 7. Pontillo contends that the trial court erred in granting summary judgment in favor of The Warehouse. Pontillo claims that because Gilpatrick consumed alcohol while working at The Warehouse, became intoxicated, and was driving home from work while intoxicated when he caused his injuries, The Warehouse is vicariously liable for Gilpatrick’s actions. Pontillo asserts that during Gilpatrick’s trial for D.U.I. Mayhem, Gilpatrick admitted that at the time in question he was employed by The Warehouse and had consumed alcohol at The Warehouse prior to the collision.
 

 ¶ 8. The Warehouse asserts that Gilpa-trick was not an employee, but he was merely given gas money to operate the karaoke machine that particular night. The Warehouse claims that no agent, employee, or principal of The Warehouse served Gilpatrick alcohol when he was visibly intoxicated. The Warehouse maintains that it only serves food, beer, and set ups (i.e., Coke, Sprite, other drinks, and ice). However, patrons were allowed to bring their own liquor into the establishment.
 

 ¶ 9. According to the amended complaint, Pontillo filed suit against The Warehouse for negligently selling alcohol to the visibly intoxicated Gilpatrick, thereby violating Mississippi Code Annotated section 67-1-83 (Rev.2005) by serving, furnishing, or selling alcohol to Gilpatrick; furnishing, serving, and allowing Gilpatrick to consume alcohol and become intoxicated while working within the scope of his employment; and negligently hiring and supervising Gilpatrick. The doctrine of respondeat superior imputes the negligent acts of an employee to the employer if those acts were done within the scope of employment.
 
 Commercial Bank v. Hearn,
 
 923 So.2d 202, 204(¶ 6) (Miss.2006).
 

 ¶ 10. According to the supreme court, the general rule to determine if an employee was acting within the scope of employment or in the furtherance of the employer’s business is as follows:
 

 [I]f an employee who is delegated to perform certain work for his employer steps or turns aside from his master’s work or business to serve some purpose of his own, not connected with the employer’s business, or, as it is often expressed, deviates or departs from his work to accomplish some purpose of his
 
 *800
 
 own not connected with his employment — goes on a “frolic of his own” — the relation of master and servant is thereby temporarily suspended, and the master is not liable for his acts during the period of such suspension; he is then acting upon his own volition, obeying his own will, not as a servant, but as an independent person, even though he intends to and does return to his employer’s business after he has accomplished the purpose of his detour from duty. The test of the employer’s liability for the act of an employee who departs from the employer’s business for purposes of his own is whether he was engaged in his employer’s business at the time of the accident, and not whether he purposed to resume it. The employee is, so long as he is engaged in affairs of his own or in pursuing some purpose unrelated to his master’s business, acting as much outside the scope of his employment as he would be were his working day ended, or his task completed, and thus his employer is relieved from liability for the consequence of any tortious conduct committed by the employee during that period, however short it may be.
 

 Seedkem South, Inc. v. Lee,
 
 391 So.2d 990, 995 (Miss.1980).
 

 ¶ 11. On the night of the accident, Gilpatrick was asked to operate the karaoke machine and to disassemble and store the equipment once the bar closed. For his services that night, Gilpatrick was given gas money. Gilpatrick stated that when he left The Warehouse at approximately 12:15 a.m. on March 19, 2008, he was going home. Approximately 30-45 minutes after leaving the bar, the accident occurred. Gilpatrick testified at trial that prior to the accident, he had just gotten off work at The Warehouse, where he had been working the karaoke equipment for about a month. In addition, Gilpatrick stated at trial that despite the fact that he had only consumed about three beers before leaving the bar, his efforts to answer his cell phone that had fallen on the floorboard caused him to veer into oncoming traffic. During his deposition, Gilpatrick stated that because the person who usually operated the karaoke equipment did not show up for work, he agreed to help out since he was familiar with the equipment. Gilpatrick stated that he was only given gas money for his assistance. Gilpatrick testified at his deposition that he was not served any alcohol by any employee of The Warehouse and did not recall purchasing any “set ups” that night.
 

 ¶ 12. Brenda Ezell, who was a bartender at the time, testified at her deposition that Gilpatrick was not employed at The Warehouse, but she did recall him operating the karaoke equipment for Beth Blakely’s birthday party. Ezell stated that she did recall seeing Gilpatrick with a juice bottle, but she never saw any employee of The Warehouse serve Gilpatrick any beer that night. Blakely, who was employed as the manager and a bartender at The Warehouse, testified that she was off duty because she was celebrating her birthday that night at the bar. Blakely stated that she recalled Gilpatrick drinking from what appeared to be an orange juice bottle. Angela Harris, a former employee of The Warehouse, testified at her deposition that Gilpatrick was not a regular employee, and to her knowledge, that night was the only time Gilpatrick had ever operated the karaoke equipment at The Warehouse.
 

 ¶ 13. We find that Pontillo failed to present any evidence that Gilpatrick consumed any alcohol while operating the karaoke equipment at The Warehouse. Further, deposition testimony from two current employees and one former employee of The Warehouse denied that Gil-patrick was an employee. At the time
 
 *801
 
 the accident occurred, Gilpatrick had completed his service of operating the karaoke equipment that night. Although Gilpatrick testified during his trial that from the time of dissembling the karaoke equipment to the time of the accident he consumed three beers, Pontillo failed to produce any evidence to indicate that Gil-patrick was furnished, served, or purchased any alcoholic or intoxicating beverage from The Warehouse. Finding no evidence that a genuine issue of material fact exists, we find this issue lacks merit.
 

 II. Expert Witness
 

 ¶ 14. Pontillo argues that the trial court erred in granting The Warehouse’s motion to strike the affidavit of expert witness, Dr. Moulds, without a hearing. Pontillo asserts that a retrograde blood-alcohol-content extrapolation was presented to the court to satisfy his burden on summary judgment. Pontillo claims that Dr. Moulds’s affidavit provided an opinion as to Gilpatrick’s level of intoxication at the time of the accident.
 

 ¶ 15. It is within the sound discretion of the trial court to make a determination as to whether a witness possesses the knowledge, skill, experience, training, and/or education to qualify as an expert.
 
 Bass v. Bobo,
 
 980 So.2d 944, 948(¶ 5) (Miss.Ct.App.2007). Thus, the “abuse of discretion standard means [that] the judge’s decision will stand unless the discretion he [or she] used is found to be arbitrary and clearly erroneous.”
 
 Id.
 

 ¶ 16. Review of Dr. Moulds’s resume indicates that she is a clinical counselor. Dr. Moulds is trained in the areas of psychology and health promotion, and her research focuses on eating disorders. Dr. Moulds’s work experience as it relates to alcohol and substance abuse focuses mainly on counseling, alcohol screening, intervention, and program promotion.
 

 ¶ 17. There is no evidence to indicate that Dr. Moulds is qualified to render opinions in the relevant field. In her affidavit, Dr. Moulds speculates on Gilpatrick’s blood-alcohol concentration at the time of the accident. Dr. Moulds opined that according to her calculations, Gilpatrick consumed more alcohol than he claimed in his testimony, and Gilpatrick was drinking while working or was significantly impaired when he reported to work. However, there is no evidence to suggest that Dr. Moulds possessed any analytical skills to conduct a blood-alcohol-content extrapolation or that the mathematical method Dr. Moulds used to obtain Gilpatrick’s metabolic rate of alcohol consumption is accepted or reliable within the relevant field. In sum, Dr. Moulds offered no factual or scientific basis for her opinions, and the affidavit offered no credence as to whether any genuine issue of material fact existed. Thus, we find that the trial court did not err in striking Dr. Moulds’s expert affidavit. Therefore, this issue is without merit.
 

 CONCLUSION
 

 ¶ 18. We find that the trial court did not commit error in granting summary judgment in favor of The Warehouse and in striking the affidavit of Pontillo’s expert witness. Thus, we affirm the judgment of the trial court.
 

 ¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.